# Exhibit 18

$ 002.20

Donald Borchers
250 Jacaranda Drive
#801
Plantation FL 33324

U.S. Copyright Office
Records Research &
Certification Section
101 Independence Ave., SE
Washington, DC 20559

**UNITED STATES COPYRIGHT OFFICE**

# Receipt of Payment

**RECORDS RESEARCH & CERTIFICATION**

Name: Donald Borchers

Address: 250 Jarcaranda Drive
#801
Plantation FL 33324

Phone: 310-490-1056

Completed Date: 3/8/18

Service Request No.: 1-6319186613 (LAWE)

Registration No.: V3022P146-147

Registration No.: V3022P177-183

Registration No.:

| Service | Unit Price | Quantity | Fee | Amount Paid |
|---|---|---|---|---|
| **Retrieval Services** | | | | |
| Physical deposit | $200.00 per hour (1 hour min.) or per 6 | | $ 0.00 | |
| Electronic deposit/application | $100.00 (first 30 mins.) | | $ 0.00 | |
|    Each additional 15 minutes | $50.00 | | $ 0.00 | |
| Physical correspondence | $200.00 per 6 | | $ 0.00 | |
| Electronic correspondence | $100.00 (first 30 mins.) | | $ 0.00 | |
|    Each additional 15 minutes | $50.00 | | $ 0.00 | |
| Retrieval for inspection of correspondence (physical) | $200.00 | | $ 0.00 | |
| Retrieval for inspection of correspondence (e-file) | $100.00 | | $ 0.00 | |
| Retrieval for inspection of deposit (physical) | $200.00 | | $ 0.00 | |
| Retrieval for inspection of deposit (e-file) | $100.00 | | $ 0.00 | |
| **Copy Services** | | | | |
| Additional certificate | $40.00 | | $ 0.00 | |
| Black and white (8.5" x 11") | up to 24 pages ($12 min.) | 2 | $ 24.00 | $ 24.00 |
|    Each additional page | $0.50 per page | | $ 0.00 | |
| Black and white (11" x 17") | up to 12 pages ($12 min.) | | $ 0.00 | |
|    Each additional page | $1.00 per page | | $ 0.00 | |
| Color (8.5" x 11") | up to 6 pages ($12 min.) | | $ 0.00 | |
|    Each additional page | $2.00 per page | | $ 0.00 | |
| Color (11" x 17") | up to 3 pages ($12 min.) | | $ 0.00 | |
|    Each additional page | $4.00 per page | | $ 0.00 | |
| CD/DVD | $30.00 | | $ 0.00 | |
| Flash drive | $30.00 | | $ 0.00 | |
| Audio cassette | $75.00 (first 30 mins.) | | $ 0.00 | |
|    Each additional 15 minutes | $20.00 | | $ 0.00 | |
| Video cassette | $75.00 (first 30 mins.) | | $ 0.00 | |
|    Each additional 15 minutes | $20.00 | | $ 0.00 | |
| **Additional Services** | | | | |
| Certification | $200.00 | | $ 0.00 | |
| Double certified certificates | $240.00 | | $ 0.00 | |
| Expedited service | $305.00 per hour | | $ 0.00 | |
| Overnight shipping (FedEx) | $45.00 | | $ 0.00 | |
| Fax | up to 7 pages ($7 min.) | | $ 0.00 | |
|    Each additional page | $1.00 per page | | $ 0.00 | |
| Public photocopying | $0.25 per page | | $ 0.00 | |
| Outside Service (DUPL/MBRS) | $ | | $ 0.00 | |
| **Search Services** | | | | |
| Search estimate | $200.00 | | $ 0.00 | |
| Litigation search | $200.00 per hour | | $ 0.00 | |
| Inspection search | $200.00 per hour | | $ 0.00 | |
| Search report | $400.00 first 2 hours (2 hour min.) | | $ 0.00 | |
|    Each additional hour | $200.00 | | $ 0.00 | |
| | | Total Fee | $ 24.00 | |
| | | Total Amount Paid | | $ 24.00 |
| | | Refund | | $ 0.00 |

U.S. Copyright Office · Library of Congress · 101 Independence Avenue SE · Washington, DC 20559 · www.copyright.gov

REVISED 02/2018



# COPY OF
# CERTIFICATE OF
# RECORDATION

**RECORDED IN VOLUME: 3022**
**DOCUMENT NO. 146-147**
**ON: August 23, 1994**

NOTE: due to the nature of the storage medium
(microfilm) the attached photocopies are the best possible copies
available.



Copyright
Office
of the
United
States
THE
LIBRARY
OF
CONGRESS

# Certificate of Recordation

THIS IS TO CERTIFY THAT THE ATTACHED DOCU-
MENT WAS RECORDED IN THE COPYRIGHT OFFICE
ON THE DATE AND IN THE PLACE SHOWN BELOW.

THIS CERTIFICATE IS ISSUED UNDER THE SEAL OF THE COPYRIGHT OFFICE



23Aug94

3022        146

3022

OFFICIAL SEAL

*Barbara Ringer*

Acting
Register of
Copyrights and
Associate
Librarian for
Copyright

VOL 3022 PAGE 146

# SHORT FORM ASSIGNMENT

KNOW ALL MEN BY THESE PRESENTS, that for valuable consideration, receipt of which is hereby acknowledged, the undersigned, Park Avenue Entertainment, L.P. ("Seller") sells, transfers and assigns to Miramax Film Corporation ("Purchaser"), its successors and assigns, (i) the right to produce one remake or sequel based on the motion picture entitled "Children of the Corn" (the "Original Picture") for initial theatrical release or initial video release and tentatively entitled "Children of the Corn IV" (the "Picture") and (ii) the right for Seller to distribute, exhibit, perform, release, advertise and exploit the Picture in any and all media, now or hereafter known, at any time throughout the universe in perpetuity, as well as merchandising rights, interactive or multimedia rights, music publishing, print publication of screenplay, novelization, comic book, book publication rights for "the making of the Picture" and soundtrack rights with respect to the applicable Picture at any time throughout the universe in perpetuity to the extent that Seller has such rights; provided, however, that the foregoing rights shall not include (a) any right, title or interest in or to the Original Picture or in either the first or second sequel to the Original Picture (collectively, the "Sequels") or any element of the Original Picture or any of the Sequels, including the characters portrayed therein or the title thereof, other than the right to use the same in and in connection with the Picture and the exploitation thereof, or (b) any remake and/or sequel rights.

This assignment is executed pursuant to, and should be read in connection with, that certain Agreement, dated as of June 30, 1994 (the "Assignment Agreement") between Seller and Purchaser and, in the event of any conflict between the provisions hereof and the Assignment Agreement, the provisions of the Assignment Agreement shall control.

IN WITNESS WHEREOF, the undersigned has executed this instrument as of the 30th day of June, 1994.

PARK AVENUE ENTERTAINMENT, L.P.,
a California limited partnership

By: Miko Enterprises,
    a California corporation
    General Partner

By: _Mitchell Koch_
    Mitchell Koch

Its: President

MIS_0014.897

VOL 3022 PAGE 147

STATE OF __California__ )
                          ) ss.
COUNTY OF __Los Angeles__ )

On __August 18__, 1994, before me, __Wendy C. Macdonald__, personally
appeared __Mitchell Koch__, personally known to me or proved to me on
the basis of satisfactory evidence to be the person whose name is subscribed to the
within instrument and acknowledged to me that he executed the same in his
authorized capacity, and that by his signature on the instrument the person, or the
entity upon behalf of which the person acted, executed the instrument.

        WITNESS my hand and official seal.



SIGNATURE OF NOTARY

OFFICIAL NOTARY SEAL
WENDY C. MAC DONALD
Notary Public — California
LOS ANGELES COUNTY
My Comm. Expires JUL 14, 1995



# COPY OF
# CERTIFICATE OF
# RECORDATION

RECORDED IN VOLUME: 3022
DOCUMENT NO. 177-183
ON: August 23, 1994

NOTE: due to the nature of the storage medium
(microfilm) the attached photocopies are the best possible copies
available.



Copyright
Office
of the
United
States

THE
LIBRARY
OF
CONGRESS

# Certificate of Recordation

THIS IS TO CERTIFY THAT THE ATTACHED DOCU-
MENT WAS RECORDED IN THE COPYRIGHT OFFICE
ON THE DATE AND IN THE PLACE SHOWN BELOW.

THIS CERTIFICATE IS ISSUED UNDER THE SEAL OF THE COPYRIGHT OFFICE



DATE OF RECORDATION

23Aug94

| VOLUME | PAGE |
|--------|------|
| 3022   | 177  |

| VOLUME | PAGE |
|--------|------|
| 3022   | 185  |

OFFICIAL SEAL

Barbara Ringer

Acting
Register of
Copyrights and
Associate
Librarian for
Copyright
Services

VOL 3022 PAGE 177

## SHORT FORM ASSIGNMENT

KNOW ALL MEN BY THESE PRESENTS, that for valuable consideration, receipt of which is hereby acknowledged, the undersigned, Fifth Avenue Entertainment, Ltd. ("Assignor") transfers and assigns to Park Avenue Entertainment, L.P. ("Assignee"), its successors and assigns, all of Assignor's right, title and interest in and to the materials and property identified on Exhibit A attached hereto and incoporated here  .

This assignment is executed pursuant to, and should be read in connection with, that certain Asset Purchase Agreement, dated as of June 30, 1994 (the "Assignment Agreement") between Assignor and Assignee and, in the event of any conflict between the provisions hereof and the Assignment Agreement, the provisions of the Assignment Agreement shall control.

IN WITNESS WHEREOF, the undersigned has executed this instrument as of the 30th day of June, 1994.

FIFTH AVENUE ENTERTAINMENT, Ltd.

By: _____

Its: _____

MES_D998.KUP

VOL 3022 PAGE 178

STATE OF *California*  )
                       ) ss.
COUNTY OF *Los Angeles* )

On *August 5*, 1994, before me, *M. Anne Urquhart* personally appeared *Lawrence Ruppin*, personally known to me or proved to me on the basis of satisfactory evidence to be the person, whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

M. ANNE URQUHART
COMM. # 977778
Notary Public — California
LOS ANGELES COUNTY
My Comm. Expires SEP 1, 1996

*M. Anne Urquhart*
SIGNATURE OF NOTARY

MES_D99.KUP

VOL 3022 PAGE 1 79

## Exhibit A

**A.    Completed Film Rights.** All of Seller's right, title and interest, of every kind and nature, whether now known or hereafter devised, throughout the universe, in and to (i) the motion pictures entitled "Angel IV" and "Children of the Corn III" (the "Completed Films") and (ii) all literary or other properties upon which such Completed Films are, in whole or in part, based on or which are or may be incorporated into the Completed Films, including, without limitation, any drafts or completed scripts therefore (the "Literary Properties") and (iii) all products and proceeds of the foregoing, whether now in existence or hereafter made, acquired or produced, including, but not limited to, the following:

1.    all film and advertising materials for the Completed Films and all elements necessary to produce such materials, including, without limitation, all producing prints, preprint elements, color reversal intermediates, color separations, matrices, interpositives, and internegatives, exposed (developed and undeveloped) negative films, soundtracks, positive prints, master tapes, cassettes and discs, master recordings, discs, master video tapes, cassettes and discs and master film negatives, cut-outs and trims connected with the Completed Films, whether or not completed, and any advertising and promotional materials relating thereto;

2.    all rights in and to all music, musical compositions, lyrics and recordings used and to be used in, or derived from, the Completed Films, including, without limitation, all rights to record, re-record, produce, reproduce, license, synchronize or publish all or any of said music and musical compositions;

3.    all soundtrack elements, including, without limitation, master magnetic tracks or other optical sound track recordings and music cue sheets;

4.    the photoplays, treatments, scenarios, screenplays and scripts upon which the Completed Films are based;

5.    all common law and statutory copyrights relating to the Completed Films and the Literary Properties, all copyright registrations and applications for registration, now existing or hereafter arising, United States and foreign, obtained or to be obtained on or in connection with the Completed Films, the Literary Properties or any parts thereof, and all rights to renew or extend such copyrights and the right of Purchaser to sue in its own name and in the name of the Seller for past, present and future infringements of copyright;

6.    all contracts, agreements or other arrangements with writers, directors, producers, actors or others (including, without limitation, any of their loan out companies) who rendered or furnished services, rights, materials, performances or otherwise participated in preparation or production of the Completed Films, and to the extent applicable to the Completed Films and the "Pictures" (as defined below), the rights

and benefits under the agreements listed on Schedule 2 hereto;

7.  all distribution and other exploitation rights, and all remake, sequel, merchandising, commercial tie-up, and other allied, ancillary, incidental and subsidiary rights related to the Completed Films, including, without limitation, all rights throughout the world to broadcast, transmit or reproduce by means of television, including commercially sponsored, sustaining and subscription, satellite (or "pay") television, video cassettes, or discs, or by any process analogous thereto, now known or hereafter devised, the Completed Films and any remake of or sequel thereto;

8.  all distribution agreements related to the Completed Films and all accounts, accounts receivable, general intangibles, contract rights and other rights relating thereto, including, without limitation, (i) the agreement between Fifth Avenue Entertainment, Ltd. and International Video Productions Inc., dated as of February 4, 1994, regarding distribution of the film "Angel IV" and (ii) the agreement between Fifth Avenue Entertainment, Ltd. and Miramax Film Corporation, dated November 26, 1991, regarding distribution of the film "Children of the Corn III," as thereafter modified or amended.

9.  the title of the Completed Films and the Literary Properties and all rights to the use thereof, including, without limitation, rights protected by trade mark and service mark laws against unfair competition or any other applicable statutory, common law, or other rule or principle of law; and all trade marks, service marks and trade names, at any time owned or used by the Seller in connection with the Completed Films;

10.  the dramatic, non-dramatic, stage, television, home video, home laser disc, radio, publishing, interactive, multimedia, and any and all analogous rights thereto, whether now known or hereinafter devised, in and to the Completed Films and the Literary Properties relating thereto.

B.  <u>Remake and Sequel Rights.</u>

1.  All of Seller's right, title and interest, if any, in and to all remake and sequel rights of any kind or nature whatsoever in and to (i) the feature length motion pictures listed on Schedule 1 hereto (the "Pictures") and (ii) any underlying or literary, dramatic or other material (including all rights of every kind or nature whatsoever in and to any such remake or sequel), including, without limitation, all rights to develop, produce, reproduce, distribute, exhibit, exploit and otherwise turn to account any such remake or sequel by any means and in any medium, whether now known or hereafter devised, throughout the universe.

2.  Subject to that certain Agreement for Purchase and Sale of certain assets of NWE and its affiliates, dated as of November 30, 1989 (the "Purchase and Sale Agreement"), between New World Entertainment, Ltd. ("NWE") and certain of its affiliated and related entities and Trans Atlantic Distributors, L.P., a California limited partnership ("TAD"), all merchandising, commercial tie-up, dramatic, non-dramatic, stage,

television, home video, home laser disc, radio, publishing, interactive, multimedia (or any and all analogous rights thereto, whether now know or hereafter devised) and any and all other allied, ancillary, incidental and subsidiary rights, of every kind or nature whatsoever in and to, or derived from any remake or sequel motion picture based on the Pictures produced by or under the authority of Seller pursuant to the Agreements or otherwise acquired in connection therewith from NWE or any affiliate of NWE by TAD and transferred to Seller, including, but not limited to, those acquired under or in connection with the Purchase and Sale Agreement and, in connection therewith, Seller's right, if any, to utilize the name, voice, likeness and/or biography of the cast, director, producers, writers, composers, music performers and performances and other personnel or entities rendering services for the Pictures or otherwise in connection therewith to the fullest extent legally possible, and in conformity with the Agreements and limitations therein.

3.      In connection with the exploitation and/or protection of the rights granted herein, all rights and causes of action (including the benefit of all representations, warranties, indemnifications and other covenants) under all contracts, agreements or other arrangements with writers, directors, producers, actors or others (including, but not limited to, any of their loan-out companies) who rendered or furnished services, rights, materials, performances or otherwise participated in preparation or production of the Pict...es and/or under and/or pursuant to which TAD or any predecessor-in-interest acquired any rights in any underlying material of any kind or nature whatsoever.

included in such remake and sequel rights are the absolute, irrevocable and unconditional rights to use and authorize others to use (but only in and/or in connection with the development, production, distribution, advertising marketing, and/or exploitation of such remakes and sequels), at no expense to Purchaser and Purchaser's successors and assigns, excerpts from the Pictures (which excerpts from any particular Picture shall not exceed in any single such remake or sequel an aggregate of twenty (20) minutes running time), the titles and/or subtitles thereof, and all other rights in and to the Pictures that are similar to the rights in the underlying films or sequels customarily utilized, in and/or in connection with the development, production, distribution, advertising marketing, and/or exploitation of remakes and/or sequels in the United States motion picture industry.

VOL 3022 PAGE 182

## Schedule 1

1. Angel, Angel II and Angel III

2. Children of the Corn and Children of the Corn II

3. Reform School Girls

4. Soul Man

5. Crimes of Passion (to the extent not already transferred to Purchaser)

VOL 3022 PAGE 183

## Schedule 2

4. Literary Purchase Agreement between Stephen King, Doubleday and Company and Hal Roach Studios Inc., which is undated (but contains a revision date of May 27, 1982 in the bottom, left corner).

5. Literary Purchase Agreement, dated July 21, 1993, between New World Pictures and Hal Roach Studios.

6. Amendment to Literary Purchase Agreement, dated July 29, 1983, between New World Pictures and Hal Roach Studios.

7. Letter Agreement, dated January 11, 1993 from Jeffer, Mangels, Butler & Marmaro to Jay D. Kramer regarding the settlement of the dispute with Stephen King.

# Exhibit 19

# QUITCLAIM AGREEMENT

This Quitclaim Agreement (the "**Agreement**") is made and entered into as of November 30, 2016 by and between PARK AVENUE ENTERTAINMENT LLC ("**Grantor**") and GRAPHIC NOVEL ENTERPRISES ("**Graphic**") with reference to the following:

WHEREAS, Grantor acquired certain rights in and to that certain motion picture presently entitled CHILDREN OF THE CORN (the "**Property**"), originally released in 1984 and based on a story written by Stephen King; and

WHEREAS, Graphic desires to acquire Grantor's rights to the Property as set forth herein; and

WHEREAS, Grantor desires to grant to Graphic Grantor's rights to the Property as set forth herein.

NOW THEREFORE, for the mutual premises and promises contained herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto hereby agree as follows:

1.      **QUITCLAIM GRANT OF RIGHTS.** Subject to Graphic paying Grantor the Purchase Price as defined in paragraph 2 hereinbelow and the other terms of this Agreement, Grantor hereby grants, conveys, sets-over and assigns to Graphic, solely, exclusively and irrevocably, all of Grantor's right, title and interest, whether or not now known, in and to (a) the Property; (b) all rights underlying the Property; and (c) all rights appurtenant to the Property, in all cases throughout the universe in perpetuity (the "**Rights**").

2.      **PURCHASE PRICE.** As full and complete consideration for Grantor entering into this Agreement and granting to Graphic the rights set forth herein, Graphic shall pay, and Grantor shall accept, the sum (the "**Purchase Price**") of TEN THOUSAND DOLLARS ($10,000.00). Graphic shall not be required to pay any additional sums to Grantor with respect to the Rights or Graphic's exploitation thereof. The Purchase Price to be paid by check via overnight delivery no later than three (3) business days following Grantor's execution hereof.

3.      **GRANTOR'S RIGHTS TO THE PROPERTY.** Notwithstanding anything herein to the contrary, Grantor makes no representation or warranty that Grantor currently owns any right, title or interest in or to the Property.

4.      **REPRESENTATIONS AND WARRANTIES.** Each party, on behalf of itself, hereby represents and warrants to the other party that it has the right and power and is free to enter into this Agreement. Grantor further represents and warrants that Grantor has not transferred any of the Rights to any affiliated or related person or entity.

5.      **INDEMNITIES.** Each party hereto (the "**Indemnitor**") shall defend and indemnify the other party (the "**Indemnitee**") from any and all costs, expenses and liabilities of the Indemnitee arising as a result of the breach by the Indemnitor of any of the Indemnitor's representations, warranties or obligations set forth herein.

6.      **NO INJUNCTIVE RELIEF.** In the event of a breach of this Agreement by Graphic, the damage (if any) caused to Grantor thereby is not irreparable or otherwise sufficient to give rise to a right to seek injunctive or other equitable relief; and Grantor's rights and remedies in the event of a breach of this Agreement by Graphic shall be limited to the right, if any, to recover monetary damages in an action of law.



7.    **NOTICES**.  All notices and payments to be given or made hereunder shall be given or made at the respective addresses of the parties as set forth below:

TO GRAPHIC

Graphic Novel Enterprises
c/o Media Advisory Services, Inc.
Attn: Bruce Eisen, Esq.
528 Palisades Dr., Suite 130
Pacific Palisades, CA 9022
Tel: 310-986-3396
Email: Bruce@EisenEsq.com

TO GRANTOR

Park Avenue Entertainment LLC
c/o Meloni Hribal Tratner LLP
21600 Oxnard St #500
Woodland Hills, CA 91367
Attn: Gerry Hribal

With a courtesy copy via email to:

Eric Gardner
egardner@panacea-ent.com

Notices may be sent by certified or registered mail, return receipt requested, properly addressed and posted, by personal delivery or by overnight courier such as FedEx or UPS.

Any notices sent by mail shall be deemed to have been given when the mailing party receives the return receipt acknowledgment. Any notices sent by personal delivery shall be deemed to have been given when received. Any notices sent by overnight courier shall be deemed to have been given three (3) business days after deposit with such courier company. Correspondence in the ordinary course may be done via email provided that the sender of the email receives a written response (which may include a non-automated email response) to such email.

8.    **MISCELLANEOUS PROVISIONS**. The captions used in connection with the sections, paragraphs and subparagraphs of this Agreement are used only for purposes of reference and shall not be deemed to govern, limit, modify or in any manner effect the scope, meaning or intent of the provisions of this Agreement or any part thereof, nor shall such captions be given any legal effect. This Agreement cancels and supersedes all prior agreements and understandings between the parties relating to the subject matter hereof, and contains all of the terms, conditions and promises of the parties hereto and no modification of any provision hereof shall be valid or binding unless in writing. Nothing herein contained shall be construed so as to require the commission of any act contrary to law and wherever there is any conflict between any provision of this Agreement and any present or future law, contrary to which the parties have no legal right to contract, the latter shall prevail, but in such event, the provision(s) of this Agreement effected shall be curtailed and limited only to the minimum extent necessary to bring it within the requirements of such law. This Agreement may be executed in one or more counterparts, each of which when taken together shall constitute one and the same agreement, and each of which shall constitute an original copy of this Agreement. In addition, this Agreement may be executed via facsimile (including scans) and such facsimile copy shall constitute an original copy of this Agreement. No failure by either party to insist upon the strict performance of any covenant, duty, agreement, or condition of this Agreement or to exercise any right or remedy consequent upon a breach thereof shall constitute waiver of any such covenant, duty, agreement, or condition, or any such breach. Submission of this Agreement for examination, negotiation, or signature does not constitute an offer, and this Agreement shall not be effective until it is duly executed and delivered, if at all, by all parties hereto. Each party acknowledges that it or he has had an opportunity to consult with an independent attorney or other representative regarding the terms and conditions of this Agreement and that the drafting and negotiation of this Agreement has been fully participated in by all parties hereto and, for all purposes, this Agreement shall be conclusively deemed to be jointly drafted by all parties hereto. Words importing the singular shall include the plural and vice versa, words importing any gender shall include all other genders, words



importing persons shall include bodies corporate, unincorporated associations and partnerships and vice versa. References to the whole shall include the part and vice versa. All references to dollars herein shall mean United States dollars. Except as specifically set forth herein, nothing in this Agreement shall be construed as creating a partnership or joint venture of any kind between the parties or as constituting either party as the agent of the other party for any purpose whatsoever and neither party shall have the authority or power to bind the other party or to contract in the name of or create a liability against the other party in any way or for any purpose. Each party undertakes with the other to do all things reasonably within its power which are necessary or desirable to give effect to the spirit and intent of this Agreement.

9.     **GOVERNING LAW; VENUE.** This Agreement will be binding on the parties hereto, and their respective heirs, successors and assigns and shall be construed in accordance with the laws of the state of California applicable to agreements which are executed and fully performed within such state. Any and all disputes arising directly or indirectly from or relating to this Agreement, including, without limitation, the enforceability of the arbitration clause contained herein, shall be resolved by binding arbitration under the Rules of Arbitration of the Independent Film and Television Association ("**IFTA**") in effect as of the date and time request for arbitration is filed (the "**IFTA Rules**"). Such arbitration will be conducted in Los Angeles. The parties hereto agree that they will abide by any decision rendered in such arbitration and that any court having jurisdiction may enforce such a decision. The parties hereto submit to the exclusive jurisdiction of the applicable foregoing courts as the appropriate place for compelling arbitration, maintaining the status quo pending arbitration, or giving legal confirmation of any arbitration award issued. The parties hereto agree to accept service of process for all arbitral proceedings in accordance with the IFTA Rules and to accept service of process for any judicial or other proceedings by certified mail, return receipt requested or by FedEx or UPS delivery.

The parties hereby execute this Agreement as of the date written above.

**GRAPHIC NOVEL**
**ENTERPRISES**

**PARK AVENUE**
**ENTERTAINMENT LLC**

_____
Signature

_____
Signature

 Bruce Eisen/Authorized Signatory 

 Eric Gardner/Authorrized Signatory 

The person signing this Agreement represents and warrants that he/she has the legal right and authority to do so on behalf of the entity for which he/she is executing this Agreement.

Payments & Transfers > Wire Activity

# Wire Activity

◉ Print ◉ Help with this page

**I'd like to...**

▸ Schedule a wire transfer
▸ Schedule a repeating wire transfer
▸ See repeating wire activity
▸ See more choices

**Using This Page –** Below is a list of your recent wire requests. You can use the drop-down list to select how you want to view a Wire Transfer. You also can sort by recipient, or see, change or cancel a wire. Please e-mail us if you have a question about a transfer not shown below.

**Show me...** Which transactions do you want to see? -- Select Payment View -- ▾ | Show |

Wire Activity — Transactions 1 to 1 of 1

Sort by clicking column headings

| Details | Wire To | Wire From | Debit Amount | Send Amount | Wire Date | Frequency | Status ❓ | Transaction Number ❓ | Actions ❓ |
|---------|---------|-----------|--------------|-------------|-----------|-----------|-----------|------------------------|-----------|
| | Lawrence Kuppin (…0216) | Media Advisory Servi (…0137) | $10,000.00 | $10,000.00 | 12/07/2016 | One-Time | Completed | 5007052475 | See \| Inquiry |

**Page 1 of 1**



**From: Bruce Eisen** Bruce@EisenEsq.com
**Subject:** FW: Children of the Corn
**Date:** December 15, 2016 at 3:07 PM
**To:** Donald Borchers  swanguero@mac.com

fyi

**From:** Eric Gardner [mailto:egardner@panacea-ent.com]
**Sent:** Thursday, December 15, 2016 3:06 PM
**To:** Bruce Eisen <Bruce@EisenEsq.com>
**Subject:** Re: Children of the Corn

Received thx


Company Profile:

http://www.linkedin.com/pub/eric-gardner/33/b33/b4a

Panacea Entertainment
13587 Andalusia Dr East
Santa Rosa Valley, CA 93012
805-491-9400
805-491-0406 fax

**From:** "Bruce Eisen" <Bruce@EisenEsq.com>
**Date:** Thu, 15 Dec 2016 15:02:43 -0800
**To:** <ghribal@mhtcpa.com>
**Cc:** 'eric gardner'<egardner@panacea-ent.com>; The Law Offices of Bruce David
Eisen<Bruce@EisenEsq.com>
**Subject:** RE: Children of the Corn

Gerry,

Hi.

Would you please confirm receipt of the $10,000?

I just want to make sure that my bank properly sent it to you (they claim that they have).

Thanks.

Best,

Bruce


**Bruce David Eisen, Esq.**
Media Advisory Services, Inc.

A Law Corporation
528 Palisades Dr.
Suite 130
Pacific Palisades, CA 90272
Tel:  310-986-3396
Fax:  310-356-4903
Bruce@EisenEsq.com

**From:** eric gardner [mailto:egardner@panacea-ent.com]
**Sent:** Tuesday, December 6, 2016 11:21 AM
**To:** Bruce Eisen <Bruce@EisenEsq.com>
**Cc:** Gerry Hribal <ghribal@mhtcpa.com>
**Subject:** Children of the Corn

Hi -- I am pleased to attach the Quitclaim agreement signed by Park Avenue. I've cc'd Mr.
Kuppin's business manager, who has requested that the $10,000 be wired as follows:

| | |
|---|---|
| **TO:** | **California Bank & Trust** |
| | **12300 Wilshire Blvd., Ste 100** |
| | **Los Angeles, CA 90025** |
| | **(310) 481-1000** |
| **ABA #:** | **121-002-042** |
| **FBO:** | **Lawrence Kuppin** |
| **Account #:** | **3820000216** |

Thanks

Eric Gardner

# Exhibit 20

# TERMINATION AGREEMENT

This Termination Agreement (the "**Agreement**") is made and entered into as of July 27, 2017 by and between MEDIA ADVISORY SERVICES, INC. ("**Services**") and DONALD P. BORCHERS ("**Borchers**") with reference to the following:

WHEREAS, the parties have created that certain joint venture entitled GRAPHIC NOVEL ENTERPRISES (the "**Venture**") pursuant to that certain Joint Venture Agreement (the "**JV Agreement**") dated as of November 29, 2016 between the parties; and

WHEREAS, the parties desire to terminate the Venture as set forth herein.

NOW THEREFORE, for the mutual premises and promises contained herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

1.  **DEFINITIONS**. In addition to the other terms defined elsewhere herein, the following terms shall have the following meanings:

    a.      "**Lawsuit**" shall mean each and every lawsuit, arbitration, judicial proceeding or settlement between any one or more of the Borchers Parties (as defined in paragraph 8.a hereinbelow) and any and all third parties (including, without limitation, Miramax, A Subsidiary of Filmyard Holdings, The Walt Disney Company, Dimension Films and/or The Weinstein Company) with respect to, or relating to, the Property.

    b.      "**Property**" shall mean that certain motion picture presently entitled CHILDREN OF THE CORN and all rights underlying and appurtenant thereof and derivate works based thereon or any part or subset of the foregoing.

    c.      "**Quitclaim Agreement**" shall mean that certain Quitclaim Agreement between the Venture and Park Avenue Entertainment LLC dated as of November 30, 2016 with respect to certain rights in and to the Property.

2.  **TERMINATION OF VENTURE**. The Venture is hereby terminated in its entirety. As such, neither party has any right or obligation to the other with respect to the Venture, the Property, the Quitclaim Agreement and/or pursuant to the JV Agreement except as specifically set forth herein.

3.  **PRIOR AGREEMENT**. Reference is hereby made to that certain Joint Venture Agreement (the "**Prior Agreement**") dated as of November 29, 2016 between Borchers and Bruce Eisen ("**Eisen**") creating a joint venture with the name "Graphic Novel Enterprises." The parties acknowledge and agree that the Prior Agreement was previously terminated, *ab initio*, and is not, and never was, of any force or effect, that neither Borchers nor Eisen has or had any rights or obligations under or pursuant to the Prior

Agreement and that none of Borchers, Services or Eisen entered into any agreement with any third party with respect thereto or in connection therewith.

4. **RIGHTS TO VENTURE PROPERTY**. Except as specifically set forth herein, all of the Venture's property (including, without limitation, any and all rights under the Quitclaim Agreement) and obligations are hereby assigned, transferred and set-over to Borchers and Borchers hereby assumes and accepts such assignment.

5. **VENTURE OBLIGATIONS**. Any and all past, current or future obligations of the Venture whether now known or hereafter determined, including, without limitation, those obligations relating to: (a) the City of Beverly Hills, (b) the county of Los Angeles, (c) the Lawsuit, and/or (d) the Quitclaim Agreement (the "**Obligations**") are hereby assumed by Borchers in their entirety. Services has no and shall have no liability or obligation in connection with the Obligations.

6. **CONSIDERATION**.

    a. <u>Amount of Consideration</u>

In consideration of Services terminating the Venture and all of the Venture's assets being assigned to Borchers, Borchers shall pay Services a sum (the "**Consideration**") equal to the greater of: (i) TWENTY-FIVE PERCENT (25%) of one hundred percent (100%) of the Net Proceeds (as defined hereinbelow); or (ii) five thousand dollars ($5,000.00). Borchers shall pay Services the Consideration as set forth in paragraph 6.c hereinbelow.

    b. <u>Net Proceed Definition</u>

As used herein, "**Net Proceeds**" shall mean one hundred percent (100%) of all awards, settlements, payments, cash, monies or sums payable to or on behalf of any one or more of the Borchers Parties with respect to the Lawsuit after first deducting, off the top, one hundred percent (100%) of Borchers' actual, out-of-pocket third-party costs actually paid in connection with the Lawsuit.

    c. <u>Payment of the Consideration</u>

Borchers shall pay Services, in immediately available funds, one hundred percent (100%) of the Consideration (or that part of the Consideration) within three (3) business days following the receipt by any one or more of the Borchers Parties of the Net Proceeds (or any part thereof) or the financing related to any production based on the Property, as applicable, but in no event later than the commencement of principal photography of such production. Other than as expressly set forth herein, Borchers shall have no obligation to Services with respect to the Property, be it monetary or otherwise.

7.    **LEGAL SERVICES**. Reference is hereby made to that certain agreement dated as of December 1, 2016 by and between Services and the Venture with respect to legal services to be provided by Services to the Venture (the "**Legal Agreement**"). The parties, each on behalf of themselves and the Venture hereby acknowledge and agree that the Legal Agreement is terminated and that neither the Venture nor Borchers nor Services has or shall have any rights or obligations under or pursuant to the Legal Agreement.

## 8.    RELEASE OF CLAIMS

    a.  <u>By Borchers</u>

Borchers, on behalf of Borchers, Borchers' predecessors, successors, subsidiaries, business entities (owned in whole or in part), parent companies, affiliates, divisions, related entities, co-venturers (other than Services), partners, licensees, sublicensees and assigns, and all of their respective officers, directors, agents, employees, ex-employees, insurers, managers, business managers, accountants, attorneys, consultants, representatives, shareholders and/or members and any and all other persons, corporations or other entities acting under the supervision, direction, control or on behalf of any of the foregoing (the "**Borchers Parties**") does hereby release and forever discharge Services and its predecessors, successors, subsidiaries, business entities (owned in whole or in part), parent companies, affiliates, divisions, related entities, co-venturers (other than Borchers), partners, licensees, sublicensees and assigns, and all of their respective officers, directors, agents, employees, ex-employees, insurers, managers, business managers, accountants, attorneys, consultants, representatives, shareholders and/or members and any and all other persons, corporations or other entities acting under the supervision, direction, control or on behalf of any of the foregoing (the "**Services Parties**") of and from any and all claims that any of the Borchers Parties has or that might arise from or related to the Venture, the JV Agreement, the Prior Agreement, the Quitclaim Agreement, the Lawsuit or the Property (collectively, the **Released Matters**"). Borchers covenants, on behalf of itself and the Borchers Parties, not to make, assert or maintain against any of the Services Parties any claim, demand, action, cause of action, suit or proceeding arising out of or related to the Released Matters other than as may be required to enforce this Agreement or any of Borchers' rights herein.

    b.  <u>By Services</u>

Services, on behalf of the Services Parties does hereby release and forever discharge Borchers and the Borchers Parties of and from any and all claims that any of the Services Parties has or that might arise from or related to the Released Matters. Services covenants, on behalf of itself and the Services Parties, not to make, assert or maintain against any of the Borchers Parties any claim, demand, action, cause of action, suit or proceeding arising out of or related to the Released Matters other than as may be required to enforce this Agreement or any of Services' rights herein.

9.    **REPRESENTATIONS AND WARRANTIES**. Each party hereto hereby represents and warrants, each for itself, that:

      a.    It has the power and authority to enter into this Agreement and to perform its obligations hereunder; and

      b.    It has not assigned, transferred, conveyed or hypothecated any rights hereunder to any third-party.

10.   **INDEMNITIES**. Borchers shall indemnity and defend any and all of the Services Parties from and against any claim, cost, proceeding or expense arising out of or in relation to any breach by any of the Borchers Parties of any representation, warranty or obligation made herein. Services shall indemnity and defend any and all of the Borchers Parties from and against any claim, cost, proceeding or expense arising out of or in relation to any breach by any of the Services Parties of any representation, warranty or obligation made herein.

11.   **CALIFORNIA CIVIL CODE SECTION 1542**. The parties hereto acknowledge, each for itself, that they are aware that they may hereafter discover facts different from or in addition to what they now know or believe to be true with respect to the Released Matters and agree that the release shall be and remain in effect in all respects. The parties acknowledge, each for itself, that they are aware of Section 1542 of the Civil Code of California and do hereby expressly waive and relinquish all rights and benefits which such party may have under said Section which reads as follows:

      A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

**NOTICES**. All notices and payments to be given or made hereunder shall be given or made at the respective addresses of the parties as set forth below. Notices may be sent by certified or registered mail, return receipt requested, properly addressed and posted, by personal delivery or by overnight or second day delivery via FedEx or UPS. Any notices sent by mail shall be deemed to have been given when the mailing party receives the return receipt acknowledgment. Any notices sent by personal delivery shall be deemed to have been given when received. Any notices sent by overnight courier shall be deemed to have been given three (3) business days after deposit with such courier company. Correspondence in the ordinary course, may be done via email provided that the sender of the email receives a written response (which may include a non-automated email response) to such email.

TO SERVICES

Media Advisory Services, Inc.
528 Palisades Dr., Suite 130

TO BORCHERS

L. Wayne Alexander
ALF&L, LLP

Termination.Graphic.Novel.002.docx          4

Pacific Palisades, CA 9022
Tel: 310-986-3396
Email: Bruce@EisenEsq.com

1880 Century Park East, Suite 914
Los Angeles CA 90067
Email: swango@me.com

12.  **MISCELLANEOUS PROVISIONS**. Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the JV Agreement. The captions used in connection with the sections, paragraphs and subparagraphs of this Agreement are used only for purposes of reference and shall not be deemed to govern, limit, modify or in any manner effect the scope, meaning or intent of the provisions of this Agreement or any part thereof, nor shall such captions be given any legal effect. This Agreement cancels and supersedes all prior agreements and understandings between the parties relating to the subject matter hereof, and contains all of the terms, conditions and promises of the parties hereto and no modification of any provision hereof shall be valid or binding unless in writing. Nothing herein contained shall be construed so as to require the commission of any act contrary to law and wherever there is any conflict between any provision of this Agreement and any present or future law, contrary to which the parties have no legal right to contract, the latter shall prevail, but in such event, the provision(s) of this Agreement effected shall be curtailed and limited only to the minimum extent necessary to bring it within the requirements of such law. This Agreement may be executed in one or more counterparts, each of which when taken together shall constitute one and the same agreement, and each of which shall constitute an original copy of this Agreement. In addition, this Agreement may be executed via facsimile (including scans) and such facsimile copy shall constitute an original copy of this Agreement. No failure by either party to insist upon the strict performance of any covenant, duty, agreement, or condition of this Agreement or to exercise any right or remedy consequent upon a breach thereof shall constitute waiver of any such covenant, duty, agreement, or condition, or any such breach. Notwithstanding anything to the contrary contained in this Agreement, there are no third-party beneficiaries to this Agreement. Submission of this Agreement for examination, negotiation, or signature does not constitute an offer, and this Agreement shall not be effective until it is duly executed and delivered, if at all, by all parties hereto. Each party acknowledges that it or he has had an opportunity to consult with an independent attorney or other representative regarding the terms and conditions of this Agreement and that the drafting and negotiation of this Agreement has been fully participated in by all parties hereto and, for all purposes, this Agreement shall be conclusively deemed to be jointly drafted by all parties hereto. Words importing the singular shall include the plural and vice versa, words importing any gender shall include all other genders, words importing persons shall include bodies corporate, unincorporated associations and partnerships and vice versa. References to the whole shall include the part and vice versa. All references to dollars herein shall mean United States dollars. Except as specifically set forth herein, nothing in this Agreement shall be construed as creating a partnership or joint venture of any kind between the parties or as constituting either party as the agent of the other party for any purpose whatsoever and neither party shall have the authority or power to bind the other party or to contract in the name of or create a liability against the other party in any way or for any purpose. Each party

undertakes with the other to do all things reasonably within its power which are necessary or desirable to give effect to the spirit and intent of this Agreement

13.    **GOVERNING LAW; VENUE**. This Agreement will be binding on the parties hereto, and their respective heirs, successors and assigns and shall be construed in accordance with the laws of the state of California applicable to agreements which are executed and fully performed within such state. Any legal proceedings arising out of or relating to this Agreement or its alleged breach shall be brought in the Federal District Court, for the Central District of California, or, in the event that such court lacks jurisdiction, in the Superior Court of the State of California, for the County of Los Angeles, to the exclusion of any other forum, and the parties hereby submit to the exclusive jurisdiction of the aforesaid courts. Any summons, order to show cause, writ, judgment, decree or other process, issued by such court, may be served on either party at the address indicated in the agreement and in the manner set forth for Notices herein or personally without the state of California, and when so served, such party shall be subject to the jurisdiction of such court as though the same had been served within the state of California.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first written above.

**MEDIA ADVISORY SERVICES, INC.**              **DONALD P. BORCHERS**

_____              _____
Signature – Bruce Eisen, President              Signature

‹  ›                                           ⊞ copyright.gov

**MORE INFORMATION ABOUT RECORDATION**

Please see the following for more information about recordation:

- Compendium of U.S. Copyright Office Practices (Chapter 2300: Recordation)
- Recordation of Transfers and Other Documents (Circular 12)
- Calculating Fees for Recording Documents and Notices of Termination (Circular 12a)
- Document Cover Sheet (Form DCS)
- Notice of Termination Cover Sheet (Form TCS)
- 17 U.S.C. §§ 203, 204, 205, 304(c), 304(d)
- 37 C.F.R. §§ 201.4, 201.10.
- Declarations of Ownership in Musical Works

Information about submitting other types of documents to the Copyright Office.

**RECORDATION FEE CALCULATOR**

| | | |
|---|---|---|
| Number of Titles | | |
| Electronic Title List Included* | Yes | No |
| Fees | | |

*Note that electronic title lists may not be submitted with notices of termination.

**Current processing time:** Generally up to 9 months for transfers and other documents and 5 months for notices of termination.

**Currently processing:** September 2017 (transfers and other documents); December 2017 (notices of termination)

Regardless of the processing time for your recordation(s), the effective date of recordation is the date the Copyright Office receives your complete submission in acceptable form.

# atalog

atalog (1978 to present)

est: Left Anchored Title = Children of the Corn

ts: Displaying 1 of 474 entries





### *Children of the corn; Stephen King.*

**Type of Work:** Recorded Document

**:ument Number:** V9957D902

**of Recordation:** 2018-06-28

**right Document:** V9957 D902 P1-11

**ate of Execution:** as of 30Nov16

**of Certification:** 06/26/2018

**Title:** Children of the corn; motion picture / Stephen King.

**Notes:** Quitclaim agreement.

**Party 1:** Park Avenue Entertainment, LLC.

**Party 2:** Graphic Novel Enterprises.

**Names:** <u>Park Avenue Entertainment, LLC</u>

<u>Graphic Novel Enterprises</u>

Stephen King



| Save, Print and Email (**Help Page**) | | |
|---|---|---|
| Select Download Format | Full Record ⌄ | Format for Print/Save |
| Enter your email address: | | Email |

Help   Search   History   Titles   Start Over

# Exhibit 21

Louis P. Petrich
Vincent Cox
Donald R. Gordon
Daniel M. Mayeda*
Robert S. Gutierrez
Jamie Lynn Frieden
Elizabeth L. Schilken

* Also admitted in the District of Columbia

Author's E-Mail: dgordon@lpsla.com

LAW OFFICES

# LEOPOLD, PETRICH & SMITH

A PROFESSIONAL CORPORATION

www.lpsla.com

June 19, 2018

SUITE 3110
2049 CENTURY PARK EAST
LOS ANGELES, CALIFORNIA 90067-3274

TELEPHONE:  (310) 277-3333
FACSIMILE:   (310) 277-7444

A. FREDRIC LEOPOLD (1919-2008)

OF COUNSEL:
EDWARD A. RUTTENBERG
JOEL MCCABE SMITH
LORALEE SUNDRA

05587.0001

**Via Email**

Donald P. Borchers
250 Jacaranda Drive, #801
Plantation, FL 33324

   Re: Donald P. Borchers - CHILDREN OF THE CORN

Dear Donald:

  We have reviewed the copyright report of Thomson CompuMark, dated July 16, 2008, for the story entitled "Children of the Corn," by Stephen King (the "Story"), we have updated the copyright report through our review of the records of the U.S. Copyright Office and we have reviewed the documents in the chain-of title of rights to the Story provided to us, which are listed on Schedule "1" to this letter.  As you know, the Story was originally published in the March 1977 issue of Penthouse Magazine.  That issue was registered for copyright in the name of Penthouse International, Ltd. as of a publication date of February 14, 1977.  The copyright was renewed in the name of Stephen King, as author, on September 28, 2005.

  In our opinion, you have obtained the right to produce and distribute sequel motion pictures based upon the Story (hereafter "New Productions").  Such New Productions may be sequels or prequels to the stories told in the Story but, although the language is somewhat vague, we believe that such New Productions cannot include material from the Story which were included in the Original Picture (or the first two sequels).  Of course, material entirely original to you, such as a film set in a dystopian future where children rule the world and adults are hunted and endangered species, can be a part of a New Production.

  This opinion is subject to the following comments:

1. In 1994 Park Avenue essentially controlled the all rights to create future derivative works based on the Story and the Original Picture.  In 2016 Park Avenue quitclaimed all of its rights to your predecessor.  You essentially control all such rights that Park Avenue did not grant away between 1994 and 2015.  As far as we can tell, Park Avenue entered into two relevant agreements:  the 1994 agreement with Miramax and the 2005 agreement with Dimension Films, a division of Miramax.

Donald P. Borchers
June 19, 2018
Page 2

LEOPOLD, PETRICH & SMITH
A PROFESSIONAL CORPORATION

2.    On or about August 31, 2016, pursuant to section 203 of the Copyright Act, Stephen King served a Notice of Termination upon 21st Century Fox Inc. (the "Notice"), by which King sought to terminate the grant by King and Doubleday & Company, Inc. to Hal Roach Studios regarding the Story, a grant which the Notice states was executed on or about May 27, 1982. The Notice provides that the effective date of the termination is September 1, 2018. Thereafter, on or about September 22, 2017, Stephen King served a Notice of Termination pursuant to section 203 upon Dimension Films/The Weinstein Co., LLC (the "Second Notice"), by which King sought to terminate the grant by King and Doubleday & Company, Inc. to Hal Roach Studios regarding the Story, a grant which the Notice states was executed on or about May 27, 1982. The Second Notice provides that the effective date of the termination is September 22, 2019. If either the Notice or Second Notice is effective as to you, they will terminate your ability, or the ability of your successors, grantees, or assigns, to produce and distribute a new derivative work (such as a motion picture) based upon the Story in the United States.[1] We do not believe that either the Notice or the Second Notice is effective to terminate your rights to the Story. While the form and content of both notices appear to be sufficient and the notices were timely sent, neither notice was served on you nor on any party in the chain of rights from King to you. Significantly, both the Notice and Second Notice are addressed to a "Grantee, or the Grantee's Successor in Title, Whose Rights are Being Terminated" and lists those Grantees as 21st Century Fox Inc. in the Notice and Dimension Films/The Weinstein Co., LLC in the Second Notice. You are neither of these entities nor are you a "Successor in Title" to either. Therefore, neither notice was directed in any fashion to you. Since a terminating party has been held to have the ability and right to select the work to be terminated when terminating rights in and to a multi-work grant, it is logical and reasonable that the terminating party has the same right with respect to identifying (and limiting) the parties whose rights are being terminated. Thus, you can argue that the form of both notices expressly exclude you from the termination.

You can further argue that the two notices do not constitute an adequate attempt to give notice as to you. While it is customary, and is required under the Copyright Office Regulations, 37 C.F.R. 210.10, for the terminating party to serve the Notice of Termination on all parties known to be in the rights chain-of-title, which would in this case include Fifth Avenue, Park Avenue, Disney, Lakeshore, etc., that is not what the courts interpreting the termination statutes have required. The Court in *Siegel v. Warner Bros. Entertainment Inc.,* 658 F.Supp.2d 1036 (C.D. Cal. 2009), citing the influential concurring opinion in *Burroughs v. Metro-Goldwyn-Mayer, Inc.,* 683 F.2d 610 (2d Cir. 1982), held "that service of the

---

[1] Because the termination right is a matter of American copyright law, a termination would not affect your rights outside of the United States.

42161

Donald P. Borchers
June 19, 2018
Page 3

LEOPOLD, PETRICH & SMITH
A PROFESSIONAL CORPORATION

termination notice need only be made upon the last grantee in the chain of title of which those serving the notice are reasonably aware." *Siegel*, supra., 658 F.Supp.2d at 1088, quoting 3 M. & D. Nimmer, *Nimmer on Copyright* § 11.06[B] at 11–40.18–11–40.21.  Here, King only served the Notice on 21St Century Fox and the Second Notice on Dimension/Weinstein, neither of which are in the direct chain-of-title to your rights in the Story.  Given the complexity of the chain-of-title and the many references to grants of rights to the Story and the Original Picture (and sequels thereto) in the Copyright Report and the records of the Copyright Office, we believe that the better view is that service of the Notice only upon 21st Century Fox and the Second Notice only upon Dimension Films/The Weinstein Co., LLC was not adequate vis a vis the successors to the rights held by Fifth Avenue and Park Avenue.  However, the lack of case law at the federal appellate level (and other relevant authority) concerning termination/notice service requirements makes this a complex outcome to predict.

3.      We are relying on a variety of short form agreements/assignments which were recorded in the U.S. Copyright Office and/or descriptions of documents set forth in the Copyright Reports.  It would be preferable to obtain copies of all relevant documents including the underlying long form agreements; however, it is common to rely on such short form agreements in connection with older chains of title.

4.      Our opinion regarding the scope of your rights in the Story is based on our interpretation of a number of documents, especially nos. 12 and 19.  The language of the agreements is both terse and convoluted but we believe that our interpretation is a fair reading of such language.

5.      There are a number of copyright mortgages/security agreements/liens listed in the copyright report, for which releases have not been recorded, by, among others, various Cannon entities.  Most of these liens do not involve parties in the direct chain of title of your rights to the Story and they should not therefore have the potential to disrupt your rights.  Others are so outdated as to undoubtedly have been released.

Very truly yours,

Donald R. Gordon

DRG:ct

42161

Donald P. Borchers
June 19, 2018
Page 4

LEOPOLD, PETRICH & SMITH
A PROFESSIONAL CORPORATION

Schedule "1"

1.   Instrument dated March 4, 1977, by Penthouse International, Ltd. in favor of Stephen King.

2.   Literary Purchase Agreement, undated (but executed in or about October/November 1982), between Stephen King and Doubleday and Company, on the one hand, and Hal Roach Studios, Inc., on the other hand.

3.   Literary Purchase Agreement, dated as of July 21, 1983, between Hal Roach Studios and New World Pictures.

4.   Amendment, dated July 29, 1983, to Literary Purchase Agreement, dated as of July 21, 1983, between Hal Roach Studios and New World Pictures.

5.   Mortgage and Assignment of Copyright, dated June 11, 1984, by Cinema Group Venture in favor European American Bank & Trust Company.

6.   Agreement For Purchase And Sale Of Certain Assets Of New World Entertainment Limited And Affiliates, dated November 28, 1989, between New World Entertainment, Limited and Oceana Distributors L.P.

7.   Quitclaim, dated as of November 28, 1989, between New World Entertainment, Ltd. (and various of its subsidiary and affiliated companies) and Trans Atlantic Distributors, L.P. (formerly Oceana Distributors, L.P.)

8.   Short Form Assignment, dated as of May 17, 1990, by Cinema Group Venture (a joint venture between Cinema Group, Inc. and Cinema Group Partners) in favor of Destination Cinema, Inc.

9.   Short Form License Agreement, dated June 22, 1990, by Transatlantic Distributors, LP in favor of Novi, Inc.

10.  Assignment Agreement dated as of March 31, 1991, by and between Transatlantic Distributors, LP, on the one hand, and Robert Bennett, Vivaldi, Ltd., Roscomare, Ltd., and Stanton L. Stein, on the other hand.

11.  Asset Purchase Agreement, dated as of June 30, 1994, between Fifth Avenue Entertainment, Ltd. and Park Avenue Entertainment, LP.

12.  Agreement, dated June 30, 1994, between Park Avenue Entertainment, LP and Miramax Film Corporation.

Donald P. Borchers
June 19, 2018
Page 5

LEOPOLD, PETRICH & SMITH
A PROFESSIONAL CORPORATION

13.    Assignment of Rights Including Rights Under Copyright, dated as of
       September 20, 1996, between Transatlantic Distributions, L.P., Transatlantic
       Entertainment LP, and BoPaul Entertainment L.P., on the one hand, and
       Lakeshore International Corp., on the other hand.

14.    Securities and Exchange Commission Form 8-K, dated September 24, 1996,  of
       New World Communications Group Incorporated regarding Agreement and Plan
       of Merger by and among New World Communications Group Incorporated, News
       Corp., Fox Television Stations, Inc., and Fox Acquisition Co,. Inc.

15.    Copyright Mortgage and Assignment dated as of June 30, 2000, by Park Avenue
       Entertainment, LP in favor of Lakeshore International Corp.

16.    Short Form Assignment, dated as of October 10, 2001, by Fifth Avenue
       Entertainment, L.P. in favor of Lakeshore International Corp.

17.    Copyright Mortgage and Assignment dated as of October 10, 2001, by Fifth
       Avenue Entertainment LP in favor of Lakeshore International Corp.

18.    Assignment and Assumption Agreement dated August 15, 2002, by and among
       Lakeshore International Corp. and Lakeshore International LLC.

19.    Short Form Assignment, effective as of February 11, 2005, between Park Avenue
       Entertainment, L.P. and Company Films, a division of Miramax Film Corp.

20.    Letter Agreement, dated February 11, 2005, between Park Avenue Entertainment,
       L.P. and Dimension Films, a division of Miramax Film Corp.

21.    License Agreement dated as of August 31, 2010, Miramax Film NY, LLC
       (successor to Miramax Film Corp.) and W Acquisition Company, LLC
       ("Newco").

22.    License Agreement, dated as of October 6, 2015, among Disney Property Co.,
       LLC, Disney Assets Co., LLC (collectively "Company") and Walt Disney
       Pictures, one the one hand, and W Acquisition Company LLC ("Newco").

23.    Quitclaim Agreement dated November 30, 2016, by Park Avenue Entertainment
       LLC in favor of Graphic Novel Enterprises.

24.    Termination Agreement, dated as of July 27, 2017,  between Media Advisory
       Services, Inc. and Donald P. Borchers.

42161

‹   ›                                    ⊗ copyright.gov

## MORE INFORMATION ABOUT RECORDATION

Please see the following for more information about recordation:

- Compendium of U.S. Copyright Office Practices (Chapter 2300: Recordation)
- Recordation of Transfers and Other Documents (Circular 12)
- Calculating Fees for Recording Documents and Notices of Termination (Circular 12a)
- Document Cover Sheet (Form DCS)
- Notice of Termination Cover Sheet (Form TCS)
- 17 U.S.C. §§ 203, 204, 205, 304(c), 304(d)
- 37 C.F.R. §§ 201.4, 201.10.
- Declarations of Ownership in Musical Works

Information about submitting other types of documents to the Copyright Office.

## RECORDATION FEE CALCULATOR

**Number of Titles**

**Electronic Title List Included\***      Yes      No

**Fees**

\*Note that electronic title lists may not be submitted with notices of termination.

**Current processing time:** Generally up to 9 months for transfers and other documents and 5 months for notices of termination.

**Currently processing:** September 2017 (transfers and other documents); December 2017 (notices of termination)

**Regardless of the processing time for your recordation(s), the effective date of recordation is the date the Copyright Office receives your complete submission in acceptable form.**



# Form DCS (Document Cover Sheet)
### For Recordation of Documents under 17 U.S.C. §205
**UNITED STATES COPYRIGHT OFFICE**

☐ Electronic Title List Enclosed

☐ Declaration of Ownership in a Musical Work (DOMW)
*If DOMW is checked, an electronic title list must be enclosed and "Electronic Title List Enclosed" must also be checked.*

**Privacy Act Notice:** Sections 205 and 705 of title 17 of the *United States Code* authorize the Copyright Office to collect the personally identifying information (PII) requested on this form. PII is any personal information that can be used to identify, contact, or trace an individual, such as names, addresses, and telephone numbers. By providing this information, you are agreeing to the routine use of it to establish and maintain a public record, which includes appearing in the Office's paper and online public records and indexes, including the Office's online catalog, and in search reports prepared for the public. If you do not provide the information requested, recordation may be refused or delayed, and you may not be entitled to certain relief, remedies, and benefits under the copyright law.

**DO NOT WRITE IN THIS BOX**

Volume _____     Document _____

SR# _____

Date of recordation   M _____ D _____ Y _____
(ASSIGNED BY THE COPYRIGHT OFFICE)

**Send to:** *Library of Congress, Copyright Office–DOC, LM 433, 101 Independence Avenue SE, Washington, DC 20559-6000*

*If submitting a DOMW, send to: Copyright Office–DOMW, P.O. Box 71537, Washington, DC 20024-1537*

**To the Register of Copyrights:** *Please record the accompanying document.*

**IMPORTANT:** *Please read all instructions for completing this form. If you have enclosed an electronic title list or if your document is a Declaration of Ownership in a Musical Work (DOMW), check the appropriate box(es) on the top of this page.*

**1** Title of first work provided in document

Children of the Corn

**2** Total number of titles in document

1

**3** Page number(s) in document where titles information can be located

1

**4** Amount of fee calculated

$ 105.00   *(Fees are to be calculated in accordance with 37 C.F.R. § 201.3(c))*

**5** Fee enclosed

☒ Check    ☐ Money Order

☐ Fee authorized to be charged to Copyright Office deposit account

Deposit account number _____

Deposit account name _____

**6** Return receipt requested

☒ If checked, please enclose a second completed copy of this form and a self-addressed postage-paid envelope

**7** Redacted document

☐ Check if document is redacted

☐ Check if a written justification for redacted material not enumerated in 37 C.F.R. § 201.4(d)(4)(i) is enclosed

**8** English translation

☐ Check if an English translation of non-English material is enclosed

**9**  Document type

*(Check the one that best describes the document.)*

☒ Assignment   ☐ Exclusive License   ☐ Non-Exclusive License
☐ Change of Address   ☐ Mortgage or Security Agreement
☐ Affidavit/Declaration/Certification   ☐ Court Order   ☐ Will
☐ Change of Name (*e.g.*, via merger agreement, amendment to articles of incorporation)
☑ Other   Also attached is an Opinion Letter from Leopold Petrich & Smith

**10**  Document's Date of Execution

November 30, 2016

**11**  Party Information

*(Provide the names of all parties to the document and the nature of their respective relationships to the document, including which party, if any, is the current copyright owner of the works to which the document pertains. A mailing address must also be provided if submitting a DOMW and may be voluntarily provided for all other documents. If more space is needed, attach an additional sheet.)*

Name   Park Avenue Entertainment LLC
Relationship   Seller
Number/Street   % Meloni Hribal Tratner LLC; 21600 Oxnard St.   Apt/Suite   500
City   Woodland Hills   State   CA   Zip   91367

Name   Graphic Novel Enterprises
Relationship   Purchaser
Number/Street   528 Palisades Dr.   Apt/Suite   130
City   Pacific Palisades   State   CA   Zip   90272

☐ List continued on an attached additional sheet

**12**  Remitter Information and Certifications

*(You, the individual actually submitting this form and the attached document to the Copyright Office, provide your contact information and make the required remitter certifications by signing your name. The Office may use this information to contact you about the submission and will send the certificate of recordation to the provided address if the document is successfully recorded.)*

*I certify under penalty of perjury under the laws of the United States of America that I have been given appropriate authority to submit this cover sheet, accompanying document, and any other enclosed materials to the U.S. Copyright Office for recordation, and all information I have submitted is true, accurate, and complete to the best of my knowledge.*

*I understand that any falsification or misrepresentation may subject me to civil or criminal liability. By signing my name below, I acknowledge that I have read and agree to these conditions.*

Signature   Date   June 26, 2018

Name   Donald P. Borchers
Title/Organization   Owner/ Graphic Novel Enterprises
Number/Street   528 Palisades Dr.   Apt/Suite   130
City   Pacific Palisades   State   CA   Zip   90272
Phone number   (310) 490-1056   Fax number   N/A
Email   DPBorchers@gmail.com

If you are not a party to the document, describe your relationship to the document or the original parties to the document (*e.g.*, duly authorized agent of a party, successor-in-interest to a party, duly authorized agent of a successor-in-interest to a party).

**13**  Document Certifications

*(These certifications can be made either by the remitter identified on the previous page or another individual.)*

☐ Original document enclosed      ☐ Official certification enclosed

*I certify under penalty of perjury under the laws of the United States of America that the following is true and correct: (Check the box next to each certification being made. The first is always required. The second is required if an original document or official certification is not enclosed. If a different individual is making each one, complete and attach an additional copy of this page.)*

☒ *The accompanying document being submitted to the U.S. Copyright Office for recordation satisfies, to the best of my knowledge, the signature, completeness, legibility, and, if redacted, redaction requirements for recordation as specified in 37 C.F.R. § 201.4.*

☒ *The accompanying document being submitted to the U.S. Copyright Office for recordation is, to the best of my knowledge, a true and correct copy of the original, signed document.*

*I understand that any falsification or misrepresentation may subject me to civil or criminal liability. By signing my name below, I acknowledge that I have read and agree to these conditions.*

Signature _____        Date June 26, 2018

Certifier Information

*(This information is only required if an individual other than the remitter identified on the previous page is making the above certifications.)*

Name   Donald P. Borchers

Title/Organization   Owner/Graphic Novel Enterprises

If the certifier is not a party to the document, describe the certifier's relationship to the document or the original parties to the document (*e.g.*, duly authorized agent of a party, successor-in-interest to a party, duly authorized agent of a successor-in-interest to a party).

_____

_____

_____

**From:** TrackingUpdates@fedex.com
**Subject:** FedEx Shipment 781600252296 Delivered
**Date:** June 28, 2018 at 10:10 AM
**To:** swanguero@mac.com



This tracking update has been requested by:

Name:          Donald Borchers
E-mail:        swanguero@mac.com

Our records indicate that the following shipment has been delivered:

Ship date:                    Jun 26, 2018
Signed for by:                L.BUSH
Delivery location:            Washington, DC
Delivered to:                 Shipping/Receiving
Delivery date:                Thu, 6/28/2018 9:54 am
Service type:                 FedEx Express Saver
Packaging type:               FedEx Envelope
Number of pieces:             1
Weight:                       0.50 lb.
Special handling/Services     Deliver Weekday
Standard transit:             6/29/2018 by 4:30 pm

Tracking number:              781600252296

Shipper Information          Recipient Information
PLANTATION                   Washington
FL                    DC
US                    US

Please do not respond to this message. This email was sent from an unattended mailbox. This report was generated at approximately 9:10 AM CDT on 06/28/2018.

All weights are estimated.

The shipment is scheduled for delivery on or before the scheduled delivery displayed above. FedEx does not determine money-back guarantee or delay claim requests based on the scheduled delivery. Please see the FedEx Service Guide for terms and conditions of service, including the FedEx Money-Back Guarantee, or contact your FedEx customer support representative.

To track the status of this shipment online, please use the following: https://www.fedex.com/apps/fedextrack/?action=track&tracknumbers=781600252296&language=en&opco=FX&clientype=ivother

Standard transit is the date and time the package is scheduled to be delivered by, based on the selected service, destination and ship date. Limitations and exceptions may apply. Please see the FedEx Service Guide for terms and conditions of service, including the FedEx Money-Back Guarantee, or contact your FedEx Customer Support representative.

© 2018 Federal Express Corporation. The content of this message is protected by copyright and trademark laws under U.S. and international law. You can access our privacy policy by searching the term on fedex.com. All rights reserved.

Thank you for your business.

252296 

# Delivered

# Thursday 6/28/2018 at 9:54

**DELIVERED**

Signed for by: L.BUSH

**GET STATUS UPDATES**

**OBTAIN PROOF OF DELIVERY**

**FROM**

PLANTATION, FL US

**TO**

WASHINGTON, DC US

**NG NUMBER**

.52296

**E**

<press Saver

.

0.22 kg

**SHIPMENT WEIGHT**
0.23 kgs

rty

**GING**
nvelope

**L HANDLING SECTION**
/eekday

**RD TRANSIT**

18 by 4:30 pm

**ATE**

/2018

**DELIVERY**
3/2018 9:54 am

**MPANY**

edEx

folio

Relations

log

te Responsibility

om

**GE**

nge Country

---

---

---

**FEDEX**

  

© FedEx 1995-2018

Feedback    |    Site Map    |    Terms of Use    |    Security

**Form DCS** (Document Cover Sheet)
**For Recordation of Documents under 17 U.S.C. §205**

UNITED STATES COPYRIGHT OFFICE

Electronic Title List Enclosed ☐

**Declaration of Ownership in a Musical Work (DOMW)** ☐
*If DOMW is checked, an electronic title list must be enclosed and "Electronic Title List Enclosed" must also be checked.*

**Privacy Act Notice:** Sections 205 and 705 of title 17 of the *United States Code* authorize the Copyright Office to collect the personally identifying information (PII) requested on this form. PII is any personal information that can be used to identify, contact, or trace an individual, such as names, addresses, and telephone numbers. By providing this information, you are agreeing to the routine use of it to establish and maintain a public record, which includes appearing in the Office's paper and online public records and indexes, including the Office's online catalog, and in search reports prepared for the public. If you do not provide the information requested, recordation may be refused or delayed, and you may not be entitled to certain relief, remedies, and benefits under the copyright law.

**DO NOT WRITE IN THIS BOX**

Volume _____   Document _____

SR# _____

Date of recordation M _____ D _____ Y _____
(ASSIGNED BY THE COPYRIGHT OFFICE)

**Send to:** *Library of Congress, Copyright Office–DOC, LM 433, 101 Independence Avenue SE, Washington, DC 20559-6000*
*If submitting a DOMW, send to: Copyright Office–DOMW, P.O. Box 71537, Washington, DC 20024-1537*

**To the Register of Copyrights:** *Please record the accompanying document.*

**IMPORTANT:** *Please read all instructions for completing this form. If you have enclosed an electronic title list or if your document is a Declaration of Ownership in a Musical Work (DOMW), check the appropriate box(es) on the top of this page.*

**1** Title of first work provided in document

Children of the Corn

**2** Total number of titles in document

1

**3** Page number(s) in document where titles information can be located

1

**4** Amount of fee calculated

$ 105.00    *(Fees are to be calculated in accordance with 37 C.F.R. § 201.3(c))*

**5** Fee enclosed

☒ Check   ☐ Money Order
☐ Fee authorized to be charged to Copyright Office deposit account

Deposit account number _____

Deposit account name _____

**6** Return receipt requested

☒ If checked, please enclose a second completed copy of this form and a self-addressed postage-paid envelope

**7** Redacted document

☐ Check if document is redacted
☐ Check if a written justification for redacted material not enumerated in 37 C.F.R. § 201.4(d)(4)(i) is enclosed

**8** English translation

☐ Check if an English translation of non-English material is enclosed

**9**   Document type

*(Check the one that best describes the document.)*

- [ ] Assignment    [ ] Exclusive License    [ ] Non-Exclusive License
- [ ] Change of Address    [ ] Mortgage or Security Agreement
- [ ] Affidavit/Declaration/Certification    [ ] Court Order    [ ] Will
- [ ] Change of Name (*e.g.*, via merger agreement, amendment to articles of incorporation)
- [ ] Other Also attached is an Opinion Letter from Leopold Petrich & Smith

**10**   Document's Date of Execution

November 30, 2016

**11**   Party Information

*(Provide the names of all parties to the document and the nature of their respective relationships to the document, including which party, if any, is the current copyright owner of the works to which the document pertains. A mailing address must also be provided if submitting a DOMW and may be voluntarily provided for all other documents. If more space is needed, attach an additional sheet.)*

Name   Media Advisory Services, Inc.

Relationship   Seller

Number/Street   528 Palisades Dr.     Apt/Suite   130

City   Pacific Palisades     State   CA     Zip   90272

Name   Donald P. Borchers

Relationship   Purchaser

Number/Street   9663 Santa Monica Blvd.     Apt/Suite   123

City   Beverly Hills     State   CA     Zip   90210

- [ ] List continued on an attached additional sheet

**12**   Remitter Information and Certifications

*(You, the individual actually submitting this form and the attached document to the Copyright Office, provide your contact information and make the required remitter certifications by signing your name. The Office may use this information to contact you about the submission and will send the certificate of recordation to the provided address if the document is successfully recorded.)*

*I certify under penalty of perjury under the laws of the United States of America that I have been given appropriate authority to submit this cover sheet, accompanying document, and any other enclosed materials to the U.S. Copyright Office for recordation, and all information I have submitted is true, accurate, and complete to the best of my knowledge.*

*I understand that any falsification or misrepresentation may subject me to civil or criminal liability. By signing my name below, I acknowledge that I have read and agree to these conditions.*

Signature   *[signature]*     Date   June 26, 2018

Name   Donald P. Borchers

Title/Organization   self

Number/Street   9663 Santa Monica Blvd.     Apt/Suite   123

City   Beverly Hills     State   CA     Zip   90210

Phone number   (310) 490-1056     Fax number   N/A

Email   DPBorchers@gmail.com

If you are not a party to the document, describe your relationship to the document or the original parties to the document (*e.g.*, duly authorized agent of a party, successor-in-interest to a party, duly authorized agent of a successor-in-interest to a party).

**13** Document Certifications

☐ Original document enclosed    ☐ Official certification enclosed

*(These certifications can be made either by the remitter identified on the previous page or another individual.)*

*I certify under penalty of perjury under the laws of the United States of America that the following is true and correct: (Check the box next to each certification being made. The first is always required. The second is required if an original document or official certification is not enclosed. If a different individual is making each one, complete and attach an additional copy of this page.)*

☒ **The accompanying document being submitted to the U.S. Copyright Office for recordation satisfies, to the best of my knowledge, the signature, completeness, legibility, and, if redacted, redaction requirements for recordation as specified in 37 C.F.R. § 201.4.**

☐ **The accompanying document being submitted to the U.S. Copyright Office for recordation is, to the best of my knowledge, a true and correct copy of the original, signed document.**

*I understand that any falsification or misrepresentation may subject me to civil or criminal liability. By signing my name below, I acknowledge that I have read and agree to these conditions.*

Signature _____    Date June 26, 2018

**Certifier Information**

*(This information is only required if an individual other than the remitter identified on the previous page is making the above certifications.)*

Name Donald P. Borchers

Title/Organization self

If the certifier is not a party to the document, describe the certifier's relationship to the document or the original parties to the document (*e.g.*, duly authorized agent of a party, successor-in-interest to a party, duly authorized agent of a successor-in-interest to a party).

_____

_____

_____

**From:** TrackingUpdates@fedex.com
**Subject:** FedEx Shipment 781600264197 Delivered
**Date:** June 28, 2018 at 10:10 AM
**To:** swanguero@mac.com



This tracking update has been requested by:

Name:              Donald Borchers
E-mail:            swanguero@mac.com

Our records indicate that the following shipment has been delivered:

Ship date:              Jun 26, 2018
Signed for by:          L.BUSH
Delivery location:      Washington, DC
Delivered to:           Shipping/Receiving
Delivery date:          Thu, 6/28/2018 9:54 am
Service type:           FedEx Express Saver
Packaging type:         FedEx Envelope
Number of pieces:       1
Weight:                 0.50 lb.
Special handling/Services    Deliver Weekday
Standard transit:       6/29/2018 by 4:30 pm

Tracking number:        781600264197

Shipper Information          Recipient Information
PLANTATION                   Washington
FL                      DC
US                      US

Please do not respond to this message. This email was sent from an unattended mailbox. This report was generated at approximately 9:09 AM CDT on 06/28/2018.

All weights are estimated.

The shipment is scheduled for delivery on or before the scheduled delivery displayed above. FedEx does not determine money-back guarantee or delay claim requests based on the scheduled delivery. Please see the FedEx Service Guide for terms and conditions of service, including the FedEx Money-Back Guarantee, or contact your FedEx customer support representative.

To track the status of this shipment online, please use the following: https://www.fedex.com/apps/fedextrack/?action=track&tracknumbers=781600264197&language=en&opco=FX&clienttype=ivother

Standard transit is the date and time the package is scheduled to be delivered by, based on the selected service, destination and ship date. Limitations and exceptions may apply. Please see the FedEx Service Guide for terms and conditions of service, including the FedEx Money-Back Guarantee, or contact your FedEx Customer Support representative.

© 2018 Federal Express Corporation. The content of this message is protected by copyright and trademark laws under U.S. and international law. You can access our privacy policy by searching the term on fedex.com. All rights reserved.

Thank you for your business.

264197 

# Delivered
# Thursday 6/28/2018 at 9:54

**DELIVERED**

Signed for by: L.BUSH

**GET STATUS UPDATES**

**OBTAIN PROOF OF DELIVERY**

**FROM**

PLANTATION, FL US

**TO**

WASHINGTON, DC US

8 - Thursday

on, DC

**MPANY**

edEx

folio

Relations

log

te Responsibility

om

Us

**ROM FEDEX**

ompatible

er Resource Center

ross Border

**GE**

nge Country

**FEDEX**

# Exhibit 22



# Exhibit 23



# Exhibit 24



# CERTIFICATE OF SERVICE

I declare that I am over the age of eighteen years and not a party to this action.

My address is1856 N. Nob Hill Rd., Plantation, FL 33322

On December 19, 2018 I served the attached THIRD AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT and REQUEST FOR JURY TRIAL, a true copy, enclosed in a sealed envelope with postage fully prepaid in the U.S., addressed as follows:

Robert D.W. Landon, III & Michael A. Ponzoli
KENNY NACHWALTER, P.A.
Four Seasons Tower
1441 Brickell Avenue, Suite 1100
Miami, FL 33131

Joseph George Galardi
Beasley & Galardi PA
505 S Flagler Drive
Suite 1500
West Palm Beach, FL 33401

Ian M. Ross & Valerie W. Ho
Greenberg Traurig, P.A.
333 SE 2nd Avenue
Miami, FL 33131

Lantern Entertainment, LLC
Attn: LEGAL DEPARTMENT
300 Crescent Court, Suite 1100
Dallas, TX 75201

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on December 19, 2018 at Plantation, FL.


Name:  JUAN CARLOS GARCIA
_____

_____ (signature)

THIRD AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT - 40

**United States District Court**
**Southern District of Florida**

Case Number: _18-cv-61537_

# SUPPLEMENTAL ATTACHMENT(S)

Please refer to supplemental paper "court file" in the division where the Judge is chambered. These attachments must <u>not</u> be placed in the "chron file".

<u>Documents Retained in Supplemental Case Files</u> (Scanned or Not Scanned)

<u>Civil Case Documents</u>
\_\_\_ • Handwritten documents/pleadings (i.e., pro se)
✗ • Poor quality scanned images
\_\_\_ • Photographs
\_\_\_ • CD, DVD, VHS tapes, cassette tapes
\_\_\_ • Surety bonds
\_\_\_ • Exhibits that cannot be scanned (e.g., objects)
\_\_\_ • Bound extradition papers
\_\_\_ • Jury verdict
\_\_\_ • Jury notes (unredacted)
\_\_\_ • Jury selection materials (seating charts, challenges, etc.)

<u>Criminal Case Documents</u>
\_\_\_ • Handwritten documents/pleadings (i.e., pro se)
\_\_\_ • Poor quality scanned images
\_\_\_ • Photographs
\_\_\_ • CD, DVD, VHS Tape, Cassette Tapes
\_\_\_ • Bond documentation
\_\_\_ • Exhibits that cannot be scanned (e.g., objects)
\_\_\_ • Indictments
\_\_\_ • Arrest warrants
\_\_\_ • Jury verdict
\_\_\_ • Jury notes (unredacted)
\_\_\_ • Jury selection materials (seating charts, challenges, etc.)

Date: _12/19/18_

Revised: 8/20/2012