## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.  18-61537-CIV-DIMITROULEAS/HUNT

DONALD P. BORCHERS,

                Plaintiff,

v.

AMAZON.COM, INC., *et al.*

                Defendants.

## LANTERN ENTERTAINMENT LLC'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, FAILURE TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED, AND INSUFFICIENT SERVICE OF PROCESS AND <u>SUPPORTING MEMORANDUM OF LAW</u>

**MOTION TO DISMISS**

Defendant Lantern Entertainment, LLC ("Lantern") hereby moves pursuant to Local General Rule 7.1 and Federal Rules of Civil Procedure 12(b)(2), (5), and (6), to dismiss the Third Amended Complaint ("TAC") filed by Plaintiff Donald P. Borchers ("Plaintiff"), and submits the following Memorandum of Law in support thereof.[1]

**MEMORANDUM OF LAW**

## I.    INTRODUCTION

Defendant Lantern has no connection whatsoever to the State of Florida.  Lantern has no headquarters or other offices in Florida, no employees in Florida, no operations in Florida, and no historical or current business in Florida.  Plaintiff does not and cannot plead that Lantern engaged in any activities that meet the threshold requirements for personal jurisdiction under Florida's long-arm statute, much less to satisfy due process requirements.  The only reason this lawsuit was filed in Florida is because Plaintiff lives there.  At the risk of stating the obvious, Plaintiff's domicile does not constitute a basis for exercising jurisdiction over a foreign defendant.  Quite simply, this Court has no legal or factual basis for exercising jurisdiction over Lantern.

Lantern was only added as a party in response to a Rule 19 motion filed (under Rule 12(b)(7)) by other defendants to dismiss for failure to name an indispensable party.  As stated in their motion, following  the acquisition of certain rights from The Weinstein Company ("TWC"), Lantern is now the holder of the rights claimed by Plaintiff in this lawsuit.  Plaintiff cannot seek a determination of his claim to those same rights without inviting Lantern to the proverbial table.  But that table should be set, if at all, in the Central District of California.  Plaintiff knows this to be true, as he previously filed a virtually identical lawsuit in that Court against TWC relating to

---

[1] As noted in the Notice of Appearance filed by Lantern's counsel (D.E. 178), Lantern's appearance and current participation are "without prejudice to, and with full reservation of, all of Lantern's rights, including but not limited to its objections to service of process, jurisdiction, and any other matter."  In addition, Lantern's Corporate Disclosure Statement required by Fed. R. Civ. Proc. 7.1 is attached as Exhibit 1.

the same claimed rights, and then, after more than a year of litigation, dismissed that lawsuit with prejudice—a preclusion issue Lantern will later address if necessary.  Even Plaintiff knows that Florida is the wrong forum for litigating these rights against these parties.

Even if this Court did have jurisdiction over Lantern (it does not), Lantern did nothing wrong, and Plaintiff fails to allege any wrongdoing by Lantern, much less anything that would support a claim for relief by Plaintiff against Lantern.  Plaintiff does not allege that Lantern made the subject film, distributed it, or engaged in any allegedly-infringing activity.  All Lantern did was inherit certain rights from TWC to which Plaintiff now claims a conflicting interest.  That does not constitute a basis for a copyright claim or any other legal claim of wrongdoing.  Moreover, and compounding Plaintiff's problems in this case, is that his attempted service of process on Lantern was defective under Florida law.

But again, the Court need never reach the sufficiency (or lack thereof) of the claims against Lantern or determine whether service on Lantern was valid.  The simple fact is that Plaintiff has not alleged any basis for jurisdiction over Lantern.  As explained more fully below, Lantern should be dismissed for lack of personal jurisdiction.  The Court should then consider the briefing of the other defendants and, based on that correct analysis, should dismiss this lawsuit altogether based on the fact that Lantern is a necessary party and the Central District of California is an adequate alternative forum.[2]

## II.   STATEMENT OF FACTS

### A.   Lantern Has No Connection To Florida

Lantern was formed on or around March 12, 2018 in Delaware in order to, among other things, purchase the assets of TWC, which at the time was a debtor-in-possession in Chapter 11

---

[2] For reasons previously raised by the other defendants in this action in their Rule 19 motion (*see* D.E. 128), the Court should not retain this case upon the dismissal of Lantern.  Any determination of rights concerning COC absent Lantern will prejudice it, and, without Lantern, no party could genuinely prevail or obtain closure.  Plaintiff himself has acknowledged that Lantern is a necessary party.  (*See* D.E. 173.)  Meanwhile, if Plaintiff has a case for copyright infringement against Lantern or any of the other defendants, he can start by bringing an action in the Central District of California (subject to any claim preclusion and other defenses).

bankruptcy proceedings in the U.S. Bankruptcy Court for the District of Delaware.  *See* Declaration of Leonard Andy Mitchell ("Mitchell Decl.") (attached as Exhibit 2) ¶ 4.  Prior to its sale to Lantern, TWC was engaged in the business of producing, financing, and distributing films and television.  *Id.*  From the time Lantern was formed through the present day, Lantern's headquarters has been located in Los Angeles, California.  *Id.* ¶ 7.  In addition to Los Angeles, Lantern has offices in New York City and Dallas.  *Id.*  All corporate records and other files kept in the course of business are located in Lantern's offices in either of Los Angeles, New York, or Dallas.  *Id.*  Other than its employees working out of Los Angeles, New York, and Dallas, Lantern does not employ any individuals in the U.S. or elsewhere.  *Id.* ¶ 8.

Lantern has never maintained any offices or agencies in the State of Florida, nor has Lantern ever had any officers, directors, employees, or agents located in the State of Florida, nor engaged any agent or equivalent entity or person for the purpose of transacting business in the State of Florida.  *Id.* ¶ 9.  Lantern has never operated, conducted, engaged in, transacted, or carried on any business or business venture in the State of Florida or, from any other location, specifically targeting consumers or businesses in the State of Florida.  *Id.* ¶ 10.  Neither has Lantern ever "solicited business" anywhere in the State of Florida or otherwise engaged in "substantial" or "not isolated" activity in the State of Florida.  *Id.*  Lantern has never had, and to this day does not have, systematic or continuous contacts with the State of Florida or individuals or property in that State.  *Id.*  Aside from responding to the instant lawsuit, Lantern has never had any dealings whatsoever with Plaintiff; has never had any communications with Plaintiff; and has never transacted business with Plaintiff in any manner concerning any matter.  *Id.* ¶ 18.

In addition, Lantern has never owned, used, possessed, or leased, or owned a mortgage or other lien on, any real property located in the State of Florida; Lantern has never entered into any agreement or other arrangement calling for the performance of any act by Lantern within the State of Florida; Lantern has never maintained a phone number or postal address within the State of Florida; Lantern has never maintained a bank account in the State of Florida and does not have a registered agent for service of process in the State of Florida; and Lantern has never

participated in any administrative, judicial or other formal or informal adjudicative proceeding of any nature whatsoever in the State of Florida.  Lantern maintains a globally accessible website at www.lanternent.com.  The website does not directly target any consumers or businesses within the State of Florida or any other state.  The website is informational in nature and highlights Lantern's core business mission and goals and news concerning Lantern.  The website does not identify each film or television asset in which Lantern owns an interest, nor does it purport to advertise for the exploitation or distribution of any such film or television asset.  Other than permitting visitors to the website to "contact" Lantern, no online business activity is conducted through Lantern's website.  *See* Mitchell Decl. ¶¶ 11–16.

Lantern received the Service of Summons and copy of the Third Amended Complaint at its office in Dallas, Texas, on January 2, 2019.  *Id.* ¶ 17.  Lantern's designated agent for service of process is Corporation Service Company, located in Wilmington, Delaware.  *Id.*

### B.      Plaintiff's Purported Rights and Claims

The gist of Plaintiff's present complaint is that he owns a bundle of unidentified rights to the 1977 short story by Stephen King entitled "Children of the Corn" (sometimes referred to herein as "COC").  Plaintiff alleges that parties involved in the making and distribution of a recent direct-to-television film entitled "Children of the Corn: Runaway" ("Film") infringed upon those rights.  *See* TAC (D.E. 175) ¶¶ 1–4, 45–53.  Plaintiff does not allege that Lantern was involved in the making or distribution of the Film.  Plaintiff never even named Lantern as a party until this latest iteration of his complaint, and only did so in response to the other defendants' motion to dismiss for failure to name an indispensable party.

Plaintiff alleges he owns certain copyrights, specifically, in the original 1977 short story. *Id.* ¶ 1 (alleging ownership of "the copyright entitled 'Children of the Corn' based upon the short story written by Stephen King . . . hereinafter the 'Short Story'"); *see also* TAC Ex. 1 ("In Summary: I own the rights to make future sequels and spinoffs based on Stephen King's original short story.  I own the characters that are unique to Stephen King's original short story.") ("My rights are quite specific.  I have rights to make future moves [*sic*] based on Stephen King's short

story."); *id.* ¶ 51 ("Plaintiff owns the exclusive rights to make movies based on the Short Story.").

Confusingly, Plaintiff then inconsistently articulates his ownership interest as deriving exclusively from a series of assignments of rights in the 1984 "Original Picture," as opposed to the 1977 short story, *id.* ¶¶ 45–50, which Plaintiff alleges entails a separate collection of copyrights. *See id.* Ex. 1. In particular, Plaintiff alleges the rights he holds to COC were initially handed down from an entity named "New World" – who owned rights in "the Original Picture" (and nothing more according to the TAC) – to an entity named Oceana Distributors L.P. in 1989, and, ultimately, conveyed to Plaintiff in July 2017 from then-owner Graphic Novel Enterprises. TAC ¶¶ 45–49. Plaintiff does not otherwise define the rights allegedly owned and assigned by "New World," and instead attaches a "1989 New World/Oceana assignment of rights," at Ex. 16, which merely provides: "[New World Entertainment, Ltd.] hereby releases, assigns, transfers and quitclaims to [Trans Atlantic Distributors, L.P. (formerly Oceana Distributors, L.P.)] all of its right, title and interest, if any, in and to the motion picture property entitled 'Children of the Corn.'" Plaintiff, however, simultaneously alleges that it is the Walt Disney Company, not he, that "owns the rights to make future sequels based on the Original Picture." TAC Ex. 1 at 3; *see also id.* at 4 ("The Walt Disney Company owns the rights to make future movies based on the original film.").[3]

Quite simply, the precise nature and scope of the rights, if any, constituting the chain of title allegedly resulting in Plaintiff's ownership of COC-related property is completely unclear from the face of the TAC. So are the precise rights Plaintiff allegedly owns today.[4]

The TAC names 19 defendants and broadly alleges claims of direct, contributory, and vicarious infringement upon Plaintiff's alleged rights against all of them. *See* TAC ¶¶ 54–102.

---

[3] Unless otherwise indicated, any page number cited herein of documents electronically filed with the Court is the page number identified in the ECF header of the document.

[4] Plaintiff also does not attach a Certificate of Registration to the TAC, nor does the TAC attach any duly recorded document evidencing assignment to Plaintiff of any purported rights in COC-related property.

Aside from attaching screenshots from numerous defendants' websites concerning the Film, *see id.* at 2–16, Plaintiff does not make any individualized allegation against any party.

Plaintiff originally filed this action on July 6, 2018.  (D.E. 1.)  Plaintiff filed a First Amended Complaint on July 13, 2018 (D.E. 25), a Second Amended Complaint on October 9, 2018 (D.E. 150), and a Third Amended Complaint on December 19, 2018 (D.E. 175), for the first time adding Lantern to this action because, per the previously filed Rule 19 motion, Lantern "owns the copyright in the allegedly infringing [COC] movie itself."[5]  (*See* D.E. 128 at 5.)  The TAC, however, makes only two passing references to Lantern: at Paragraph 35 alleging Lantern's state of incorporation, principal place of business, and that it "assumed the rights to TWC's 277-film library," and at Paragraph 37 noting that the defendants collectively, including Lantern, will be referred to in the TAC as "Defendants."  No other allegations against or references to Lantern are made.

## III.    THE COURT LACKS PERSONAL JURISDICTION OVER LANTERN

This Court has neither general nor specific personal jurisdiction over Lantern.  Under Federal Rule of Civil Procedure 12(b)(2), "[a] court must dismiss an action against a defendant over which it has no personal jurisdiction."  *Verizon Trademark Servs., LLC v. Producers, Inc.*, 810 F. Supp. 2d 1321, 1323–24 (M.D. Fla. 2011).  "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a *prima facie* case of jurisdiction."  *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009).  Where the defendant challenges jurisdiction "by

---

[5] The Court need not address the exact nature of Lantern's rights in the COC short story, the COC original film, or any related property, to decide the instant Motion.  *Benson v. QBE Ins. Corp.*, 61 F. Supp. 3d 1277, 1279 (S.D. Fla. 2014) ("On a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court considers only the four corners of the complaint, along with any documents attached to the complaint or incorporated into the complaint by reference.").  Those additional facts are included here to provide the Court with a more complete understanding of the transactions involved.  Nor are issues concerning Lantern's rights to COC relevant to the Court's jurisdictional inquiry under Rule 12(b)(2).

submitting affidavit evidence in support of its position, 'the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.'" *Id.* (quoting *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002)).  On a motion to dismiss for lack of personal jurisdiction, a court need not accept jurisdictional facts asserted in the complaint as true if controverted by the defendant.  *See Miami Breakers Soccer Club, Inc. v. Women's United Soccer Ass'n*, 140 F. Supp. 2d 1325, 1328 (S.D. Fla. 2001) (citing *United States Sec. & Exchange Comm'n v. Carrillo*, 115 F.3d 1540, 1542 (11th Cir. 1997)).

Here, Plaintiff does not even attempt to allege facts that would demonstrate *prima facie* evidence of jurisdiction over Lantern.  Indeed he cannot.  Rather, his jurisdictional allegations are broad, pure artificial conjecture and conclusion, directed to "all" defendants without any specificity.  Lantern was formed in Delaware and maintains its principal place of business in Los Angeles, California.  It has no general contacts whatsoever with the State of Florida, and no contacts in Florida or elsewhere giving rise to Plaintiff's indecipherable claims of copyright infringement.

### A.      No General Jurisdiction Exists Over Lantern

It is beyond dispute that no general personal jurisdiction exists over Lantern in Florida.  It is well established that companies like Lantern are subject to general jurisdiction only in their "place of incorporation" and "principal place of business," recently delineated by the U.S. Supreme Court to be a forum in which the out-of-state defendant's contact are so "'continuous and systematic' as to render [it] essentially at home."  *See Daimler AG v. Bauman*, 571 U.S. 117, 137–39 (2014).  Here, Florida does not even come close.  Lantern was formed under the laws of the State of Delaware[6] and maintains its principal place of business in Los Angeles where it is headquartered.  Mitchell Decl. ¶¶ 4, 7; *see also* TAC ¶ 35 (alleging "[Lantern] is incorporated

---

[6]  The domicile(s) of Lantern's members is not relevant to Lantern's "place of incorporation" for purposes of general jurisdiction.  *See, e.g.*, *Finn v. Great Plains Lending, LLC*, 2016 WL 705242, at *3 (E.D. Pa. Feb. 23, 2016) ("While [defendant] is an LLC and not a corporation, the reasoning of *Daimler* applies with equal force.").

under the laws in the State of Delaware" and conceding Lantern's principal place of business is *not* in Florida).  Lantern also has offices in New York and Dallas.  Mitchell Decl. ¶ 7.  As explained above, Lantern has never conducted any business whatsoever in the State of Florida, *see id.* ¶¶ 9–15, no less to the substantial degree necessary to render it "at home" there for purposes of general jurisdiction.

### B.    No Specific Jurisdiction Exists Over Lantern

Nor would the Court's exercise of specific personal jurisdiction over Lantern satisfy Florida's long-arm statute.  *See* Fla. Stat. § 48.193.  The Florida long-arm statute provides, in relevant part, that out-of-state defendants can submit themselves to the jurisdiction of Florida courts on claims arising from the defendant's commission of a "tortious act within [Florida]" or infliction of "injury to persons or property within [Florida] arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, . . . the defendant was engaged in solicitation or service activities within this state."  Fla. Stat. § 48.193(1)(a)(2), (6); *see also* TAC ¶ 43.  Florida courts have held that "[a] plaintiff seeking to subject a nonresident defendant to jurisdiction of the court through the long-arm statute must do more than allege facts that show a possibility of jurisdiction."  *Miami Breakers Soccer Club, Inc.*, 140 F. Supp. 2d at 1328.  "The Florida long-arm statute," moreover, "is strictly construed" against the exercise of jurisdiction.  *Oriental Imports & Exports, Inc. v. Maduro & Curiel's Bank, N.V.*, 701 F.2d 889, 891 (11th Cir. 1983); *accord Coca-Cola Foods v. Empresa Comercial Internacional De Frutas S.A.*, 941 F. Supp. 1175, 1179 (M.D. Fla. 1996) ("Florida's long-arm statute must be strictly construed, and the burden of proving facts which justify use of the statute is on the plaintiff.").

Here, Plaintiff's jurisdictional allegations are limited to a general broad-brush statement that "all the Defendants"  "transact," "do" and "solicit" business in the Southern District of Florida, "committed a tortious act within the State of Florida," "caused injury to persons or property within [Florida]," "engaged in substantial and not isolated activity in the State of Florida," or "transact[ed] business in [Florida] concerning the MOVIE at issue."  TAC ¶¶ 42–43.  Of course, these allegations merely parrot Florida's long-arm statute.  Notably, the TAC contains

not a single allegation of any particular conduct of Lantern in Florida; no allegation of specific conduct bringing Lantern within Florida's long-arm jurisdiction; and no allegation of specific conduct by Lantern concerning COC in any respect, or copyrights relating to COC (as discussed further *infra* pp. 10–13).  These vague and conclusory allegations fall well short of satisfying Plaintiff's burden of showing this Court's jurisdiction over Lantern. *See also Lauzon v. Joseph Ribkoff, Inc.*, 77 F. Supp. 2d 1250, 1254 (S.D. Fla. 1999) (dismissing copyright claim for lack of personal jurisdiction where, like here, complaint merely alleged defendant was a company "doing business in the State of Florida" and observing "Florida courts require *substantial proof* before extending *in personam* jurisdiction over non-resident defendants") (emphasis added).

Contrary to Plaintiff's allegations, Lantern has made no affirmative contact with the State of Florida or individuals within it concerning COC, Plaintiff, or any other matter even tenuously related to Plaintiff's claims.  *See* Mitchell Decl. ¶¶ 9–16, 18.  Even if it had, the vagueness of Plaintiff's allegations in the TAC against Lantern make it impossible for Lantern to determine which of its hypothetical contacts (again, none actually exist) relate or gave rise to Plaintiff's infringement claim.  Plaintiff does not allege any infringing conduct (in fact, *any* conduct) on Lantern's part whatsoever.  No jurisdiction under Florida's long-arm statute exists.

### C.    Maintenance of This Case Against Lantern in Florida Would Violate Due Process

It follows from Plaintiffs' failure to allege that Lantern has any connection to Florida that maintenance of this lawsuit against Lantern would violate Lantern's due process rights.  *Future Tech Today, Inc. v. OSF Healthcare Systems*, 218 F.3d 1247, 1250 (11th Cir. 2000).   In determining whether the exercise of jurisdiction comports with due process, the Court "should consider whether (1) the defendant purposefully avails himself or herself of the privilege of conducting activities within Florida; (2) the defendant's contacts with the forum state give rise to the cause of action; and (3) the defendant reasonably anticipated being subject to jurisdiction in Florida."  *See Miami Breakers Soccer Club, Inc.*, 140 F. Supp. 2d at 1330; *see also Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010) ("the

9

defendant must have 'purposefully availed' itself of the privilege of conducting activities—that is, purposefully establishing contacts—in the forum state and there must be a sufficient nexus between those contacts and the litigation").  As applied to copyright infringement cases, "a plaintiff's claim does not 'arise out of or relate to' the defendant's contacts with the forum state unless the plaintiff's claim requires proof of the act that constitutes the defendant's contact with the forum state." *Roof & Rack Prod., Inc. v. GYB Inv'rs, LLC*, 2014 WL 3116413, at *3 (S.D. Fla. July 8, 2014) (dismissing copyright action for lack of personal jurisdiction where plaintiff provided "no causal connection between [defendant's] contacts in Florida and [plaintiff's] resulting claims").  "That a plaintiff [in a copyright action] is located in Florida is insufficient to confer jurisdiction upon a defendant who is not." *Id.*

Here, as previously stated, no act or omission on Lantern's part in or directed towards Florida can be said to relate to Plaintiff's claims because none is alleged.  A contrary result would defy logic and well-settled constitutional limits of specific jurisdiction.  In sum, the only connection Florida has to this case is that Plaintiff purportedly lives there.  That is not enough. *See id*.  The Court should dismiss Lantern for lack of personal jurisdiction.

## IV.   PLAINTIFF FAILS TO STATE ANY CLAIMS FOR RELIEF AGAINST LANTERN

Plaintiff pleads zero facts specifically concerning Lantern and identifies no infringing conduct on Lantern's part.  The TAC's allegations fail to state any claim against Lantern and dismissal of Lantern is therefore warranted.  To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "'enough facts to state a claim to relief that is plausible on its face.'"  *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1347–48 (11th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "To state a plausible claim for relief, a plaintiff must go beyond pleading merely the 'sheer possibility' of unlawful activity by a defendant and must offer 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Greene v. Alabama Dep't of Revenue*, 2018 WL 4211583, at *1 (11th Cir. Sept. 5, 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678.  "When the allegations contained in a complaint are wholly conclusory and fail to set forth facts which, if proved, would warrant the relief sought, it is proper to dismiss for failure to state a claim."  *Am. Ass'n for Advancement of Sci. v. Periodicals Publicacoes Tecnicas*, 2008 WL 11333109, at *2 (S.D. Fla. Sept. 8, 2008) (citing *Davidson v. Georgia*, 622 F.2d 895, 897 (11th Cir. 1980)).

To state a claim for copyright infringement, a plaintiff must not only allege ownership of a valid copyright but also that the defendant *copied* protected elements of the copyrighted material without authorization.  *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1232–33 (11th Cir. 2010).  The TAC fails to allege anything of the sort against Lantern.[7]

Indeed, regardless of Plaintiff's ownership problem (*see supra* n. 7), the TAC is totally devoid of allegations of *any infringing conduct or actions* on the part of Lantern, whether

---

[7] While Plaintiff's failure to satisfy the second element of copyright infringement is pronounced, *see infra* pp. 11–13, Lantern notes that Plaintiff also does not adequately plead the threshold element of *ownership*.  Indeed, Plaintiff at times alleges ownership of rights sourced in the original COC "short story," but simultaneously describes his interest as deriving from assignors who previously held rights to the 1984 "Original Picture."  TAC ¶¶ 1, 45–50.  Meanwhile, Plaintiff alleges Disney owns those rights.  *Id.* Ex. 1 at 3-4.  Even assuming Plaintiff sufficiently alleged ownership of *some* unidentified rights in COC-related property, it is utterly unclear in the TAC precisely *which* rights those are and, as discussed further in this Motion, just what of Lantern's conduct actually infringed any such particular rights.  Moreover, "[t]he law in the Eleventh Circuit is clear that a valid copyright registration is precondition to bringing an infringement suit."  *Essential Media Grp., LLC v. 43 N. Broadway, LLC*, 2017 WL 2820014, at *2 (S.D. Fla. Apr. 21, 2017) (citing *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1301-02 & n.8 (11th Cir. 2012)).  Plaintiff here fails to attach any Certificate of Registration for the COC-related copyrights he asserts, nor does he attach any assignment of any such rights to him previously recorded with the U.S. Copyright Office.  *See Tavory v. Barber*, 2009 WL 10667796, at *3 (S.D. Fla. Dec. 17, 2009) (dismissing copyright infringement claim where, "[d]espite several references to copyright registrations in [the] complaint, [plaintiff] did not attach the copyright registrations"); *see also Marketran, LLC v. Brooklyn Water Enterprises, Inc.*, 2016 WL 8678548, at *2 (S.D. Fla. Aug. 31, 2016) (suggesting, in the context of copyright assignments, that plaintiffs alleging ownership by assignment must attach both the certificate of registration and the documents reflecting assignment to them).

concerning the use, circulation or distribution of COC-related material or otherwise.  This, among other things, is fatal to the TAC.  That is, without allegations of specific infringing conduct, there can be no cognizable claim of copyright infringement.  *See, e.g.*, *Strumolo v. Alternate Family Care, Inc.*, 2007 WL 9698313, at *4 (S.D. Fla. Nov. 14, 2007) (dismissing defendant where plaintiff failed to "explain what conduct led to the [defendant's alleged] infringement"); *see also Roof & Rack Prod., Inc. v. GYB Inv'rs, LLC*, 2014 WL 3183278, at *5 (S.D. Fla. July 8, 2014) ("[b]eyond conclusory allegations of infringement, nowhere in its complaint does [plaintiff] specify how, or through what conduct, the independent contractors infringed upon [plaintiff's] copyright . . . [w]ithout a showing of the infringing conduct of another, there is no direct or primary infringement") (emphasis added).[8]

The only allegation in the TAC even referring to Lantern states merely that it is incorporated in Delaware, its headquarters is (incorrectly, *see supra* p. 3) in Dallas, and that, in July 2018, Lantern "was formed and assumed the rights to TWC's 277-film library."  TAC ¶ 35. Not a single additional allegation concerning Lantern is made.  *E.g.*, *Clay v. Cameron*, 2011 WL 13220504, at *2 (S.D. Fla. Oct. 20, 2011) (no nexus alleged between allegedly protected content and alleged infringer).  The bottom line is that the TAC is utterly silent as to Lantern in every material respect.  Lantern should not be required to guess what it is that Plaintiff claims it did wrong.  *E.g.*, *Sater Grp., Inc. v. Jack Bartlett Custom Homes Creations, Inc.*, 2007 WL 121218, at *3 (M.D. Fla. Jan. 11, 2007) (dismissing copyright infringement complaint that made only

---

[8] Insofar as Plaintiff can be said to have attempted to make allegations that Lantern committed contributory or vicarious infringement, each of those claims also fails and for the same reasons—*i.e.*, the TAC makes no actual allegation against Lantern to support these claims.  For instance, Plaintiff does not allege that Lantern, "with knowledge of the infringing activity, induce[d], cause[d], or materially contribute[d] to the infringing conduct of another."  *Roof & Rack Prod., Inc.*, 2014 WL 3183278, at *5.  No claim of contributory infringement is stated against Lantern.  Moreover, Plaintiff does not make any allegation even remotely of the ilk that Lantern failed to "exercise a right to stop" any infringing activities of any third parties and received a financial benefit as a result, *see Hydentra HLP Int. Ltd. v. Luchian*, 2016 WL 5951808, at *14 (S.D. Fla. June 2, 2016); thus, any purported vicarious infringement claim against Lantern fails.  No claim of infringement – no matter the method – can stand upon the TAC against Lantern.

"general allegations against all Defendants" from which it was "impossible to ascertain . . . which defendant committed which alleged act").[9]   Plaintiff's allegations are completely inadequate to state any claim against Lantern.  The TAC as against Lantern should be dismissed in its entirety.

## V.   SERVICE OF PROCESS ON LANTERN WAS DEFECTIVE

The TAC is also subject to dismissal because Plaintiff's purported service of process on Lantern was improper and should thus be quashed.  "Pursuant to Federal Rule of Civil Procedure 4(h), service on a corporation may be effected by following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located." *Bluewater Trading LLC v. Fountaine Pajot, S.A.*, 2008 WL 384551, at *1 (S.D. Fla. Feb. 11, 2008).  "Because of the fundamental constitutional implications of service of process, 'statutes governing service of process are to be strictly construed and enforced.'"  *McDaniel v. FirstBank Puerto Rico*, 96 So. 3d 926, 928 (Fla. Dist. Ct. App. 2012) (quoting *Shurman v. Atlantic Mortg. & Inv. Corp.*, 795 So.2d 952, 954 (Fla. 2001)).  "The determination of whether service of process is sufficient is limited to 'whether the requisites of the controlling statute have been complied with and such compliance appears of record.'"  *McDaniel*, 96 So. 3d at 929 (citing *Napoleon B. Broward Drainage Dist. v. Certain Lands Upon Which Taxes Due*, 160 Fla. 120 (1948)).

Service of process on private corporations, domestic and foreign, is governed by Fla. Stat. § 48.081.  *Bluewater Trading LLC*, 2008 WL 384551, at *1.  Under that Section, plaintiffs may effectuate service of process on corporate defendants by serving (1) specifically identified executives or directors of the defendant; (2) agents residing in or doing business in Florida; (3) the defendant's designated agent for service of process; or (4) any employee at the defendant's principal place of business.

---

[9] In *Sater*, the court found that "Plaintiffs' Amended Complaint [was] so vague or ambiguous that a party [could not] reasonably be required to frame a responsive pleading." *Id.* at *3.  The same is true here.  Lantern is unable to glean from the TAC any basis for its involvement in this matter or *what*, even, it would even be answering *to* should the TAC stand and a responsive pleading be required.

Here, Plaintiff served the summons and TAC on an individual at Lantern's office in Dallas, Texas on January 2, 2019, not its principal place of business in Los Angeles. (*See* D.E. 177.) This satisfies none of Florida's criteria for serving entities like Lantern, and service is defective as a result. In the event the Court declines to dismiss the TAC as against Lantern for either lack of jurisdiction or failure to state a claim, the Court should quash Plaintiff's attempted service of process on Lantern.

## VI.    LEAVE TO AMEND IS UNWARRANTED

The Court should dismiss the TAC as against Lantern without leave to amend. Courts need not grant leave to amend "where amendment would be futile." *Corsello v. Lincare*, Inc., 428 F.3d 1008, 1014 (11th Cir. 2005). "Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant." *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007). *See also, e.g.*, *Flippo v. Stiles*, 2014 WL 3667876, at *3 (S.D. Fla. July 22, 2014) ("Because it does not appear that Plaintiff can cure the jurisdictional defects present in this case, leave to amend will be futile."); *CCTV Outlet, Corp.*, 2017 WL 5640717, at *4 ("Given the passive nature of Defendants' website and Defendants' lack of any other meaningful contacts with Florida, any amendment to the Complaint in an attempt to establish personal jurisdiction would be futile.").

No amendment to the TAC will change the fact that this Court does not have jurisdiction over Lantern in this case. Lantern simply has no contacts with the State of Florida and has undertaken no activities or actions with respect to COC (assuming Lantern owns COC-related assets) specifically concerning Plaintiff or targeting other Florida consumers. *See* Mitchell Decl. ¶¶ 9–16, 18. The Court should not permit Plaintiff to file a fourth amended complaint as against Lantern in this District. Any such amendment would be futile, and thus, unwarranted.[10]

---

[10] Plaintiff is not necessarily without a remedy against Lantern or the other defendants should this Court dismiss the TAC with prejudice, as Lantern respectfully submits is the proper course of action. Plaintiff, if he believes he has any viable legal claim, can file an infringement action in the Central District of California, the District in which Lantern maintains its principal place of business. Indeed, as previously noted, Plaintiff filed an earlier

## VII.   CONCLUSION

For the foregoing reasons, Lantern Entertainment LLC respectfully requests that the Court dismiss the Third Amended Complaint as against it without leave to amend.

Respectfully submitted,

/s/ Samuel J. Dubbin, P.A.
Samuel J. Dubbin, P.A.
DUBBIN & KRAVETZ, LLP
Florida Bar Number 328189
sdubbin@dubbinkravetz.com
1200 Anastasia Avenue, Suite 300
Coral Gables, FL 33134
Telephone No. 305-357-9004
Facsimile No. 305-371-4701

Christopher Frost (*pro hac vice* application pending)
cfrost@eisnerlaw.com
Benjamin Kassis (*pro hac vice* application pending)
bkassis@eisnerlaw.com
EISNER, APC
9601 Wilshire Blvd., 7th Floor
Beverly Hills, CA 90210
Telephone No. (310) 855-3200
Facsimile No. (310) 855-3201

*Attorneys for Defendant Lantern Entertainment LLC*

---

complaint in that District against Lantern's predecessor, TWC, concerning issues of copyrights to COC-related content, *see Borchers v. The Weinstein Company, et al.*, Case No. 17 Civ. 6263 (C.D. Cal.).  In August 2018, Plaintiff voluntarily dismissed that action with prejudice.  (*Id.*, D.E. 128.)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 23rd  day of January, 2019, I filed the foregoing Motion to Dismiss and Supporting Memorandum of Law with the Clerk of the Court's CM/ECF system, which will send notification of such filing to all counsel of record, and sent it by first class mail to Plaintiff Donald P. Borchers, 250 Jacaranda Drive, #801, Plantation, FL 33324, with a courtesy copy by email to DPBorchers@gmail.com.


By:   /s/ Samuel J. Dubbin, P.A.
        Samuel J. Dubbin, P.A.

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.  18-CV-61537-WPD**

DONALD P. BORCHERS,

              Plaintiff,

v.

AMAZON.COM, INC., *et al.*

             Defendants.

**LANTERN ENTERTAINMENT LLC'S CORPORATE DISCLOSURE STATEMENT
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 7.1**

Pursuant to Fed. R. Civ. Proc. 7.1, the undersigned, counsel of record for Defendant Lantern Entertainment LLC ("Lantern"), certifies that, as of this date, Lantern is a wholly owned subsidiary of Lantern Entertainment Intermediate Holdco LLC ("LEIH").  No publically held corporation holds 10% or more of LEIH's stock.

Respectfully submitted,

/s/ Samuel J. Dubbin, P.A.
Samuel J. Dubbin, P.A.
Florida Bar Number 328189
sdubbin@dubbinkravetz.com
Dubbin & Kravetz, LLP
1200 Anastasia Avenue, Suite 300
Coral Gables, FL 33134
Telephone No. 305-357-9004
Facsimile No. 305-371-4701

*Attorneys for Defendant Lantern
Entertainment LLC*

1

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  18-CV-61537-WPD

DONALD P. BORCHERS,

              Plaintiff,

v.

AMAZON.COM, INC., *et al.*

              Defendants.

## DECLARATION OF LEONARD ANDY MITCHELL

1.      I, Leonard Andy Mitchell, am over the age of 18.  I am the Chief Executive Officer of Lantern Entertainment LLC ("Lantern"), a defendant in the above-captioned action.  I have reviewed the complaint of Donald P. Borchers ("Plaintiff"), which asserts claims for copyright infringement and related claims, with respect to a motion picture and short story entitled "Children of the Corn," originally published by Stephen King in 1977.  I have personal knowledge of the matters addressed herein, and, if called as a witness, I could and would testify competently thereto.

2.      I am the CEO of Lantern Asset Management LLC ("LAM").  LAM caused the formation of Lantern on or around March 12, 2018, and I was appointed CEO at the time that Lantern was formed.  As CEO, I have personal knowledge concerning and access to documents reflecting all of Lantern's business dealings and activities.  I am also familiar with Lantern's corporate structure and ongoing business ventures.

3.      Lantern is an independent film and television production limited liability company engaged principally in the business of producing, financing, and distributing films and television.

4.     Lantern was formed on or around March 12, 2018 under the laws of the State of Delaware (File No. 6793227), as the entity established in order to, among other things, purchase certain assets of The Weinstein Company and various of its affiliates and subsidiaries (collectively, "TWC"), which, at the time, were debtors-in-possession in Chapter 11 bankruptcy proceedings in the U.S. Bankruptcy Court for the District of Delaware.  Prior to its sale to Lantern, TWC was engaged in the business of producing, financing, and distributing films and television.

5.     The Honorable Mary F. Walrath, U.S. Bankruptcy Judge, approved Lantern's purchase of such assets on or around May 9, 2018.  Lantern's purchase of TWC closed on or around July 13, 2018.

6.     Throughout the years in which TWC was operating, it acquired a number of copyrights to a variety of film and television related assets.  In connection with Lantern's purchase of TWC, in addition to various other assets, Lantern assumed TWC's portfolio of rights previously held by TWC to numerous films – approximately 270 of them – and related intellectual property.

7.     From the time Lantern was formed through the present day, Lantern's headquarters has been located in Los Angeles, California.  There are 21 employees working out of Lantern's headquarters.  In addition to Los Angeles, Lantern has offices in New York City, New York, from which approximately 17 Lantern employees currently work, and Dallas, Texas, in which there are currently approximately 2 Lantern employees.  All corporate records and other files kept in the course of business are located in Lantern's offices in either of Los Angeles, New York, or Dallas.

8.     Lantern's executive officers, when not travelling in connection with temporary business dealings or working remotely as a matter of personal preference, work exclusively out of Lantern's offices in Los Angeles, New York, and Dallas.  Other than its employees working out of Los Angeles, New York, and Dallas, Lantern does not employ any individuals in the U.S. or elsewhere.

2

9.     Lantern has never maintained any offices or agencies in the State of Florida, nor has Lantern ever had any officers, directors, employees, or agents located in the State of Florida, nor engaged any agent or equivalent entity or person for the purpose of transacting business in the State of Florida.

10.     Lantern has never operated, conducted, engaged in, transacted, or carried on any business or business venture in the State of Florida or, from any other location, specifically targeting consumers or businesses in the State of Florida.  Nor has Lantern, accordingly, ever "solicited business" anywhere in the State of Florida or engaged in "substantial" or "not isolated" activity in the State of Florida.  Lantern has never had, and to this day does not have, systematic or continuous contacts with the State of Florida or individuals or property in that State.

11.     Lantern has never owned, used, possessed, or leased, or owned a mortgage or other lien on, any real property located in the State of Florida.

12.     Lantern has never entered into any agreement or other arrangement calling for the performance of any act by Lantern within the State of Florida.

13.     Lantern has never maintained a phone number or postal address within the State of Florida.

14.     Lantern has never maintained a bank account in the State of Florida and does not have a registered agent for service of process in the State of Florida.

15.     Lantern has never participated in any administrative, judicial or other formal or informal adjudicative proceeding of any nature whatsoever in the State of Florida.

16.     Lantern maintains a globally accessible website at www.lanternent.com.  The website does not directly target any consumers or businesses within the State of Florida or any other state.  The website is informational in nature and highlights Lantern's core business mission and goals and news concerning Lantern.  The website does not identify each film or television asset in which Lantern owns an interest, nor does it purport to advertise for the exploitation or distribution of any such film or television asset.  Other than permitting visitors to

3

the website to "contact" Lantern, no online business activity whatsoever is conducted through Lantern's website.

17.     Lantern received the Service of Summons and copy of the Third Amended Complaint in this action at its office in Dallas, Texas, on January 2, 2019. Lantern's designated agent for service of process is Corporation Service Company, located in Wilmington, Delaware.

18.     Aside from the instant lawsuit, Lantern has never had any dealings whatsoever with Plaintiff; has never had any communications with Plaintiff; and has never transacted with Plaintiff in any manner concerning any matter.


I HEREBY DECLARE under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this _22_ day of January 2019 at _3:09pm in Los Angeles, CA_

LEONARD ANDY MITCHELL

4